Bush *v.* Tilley.

———————◆———————

JOHN F. BUSH *vs.* JOHN TILLEY and JAMES TILLEY.

If a written contract, by reason of any mistake of fact, does not express the agreement, in fact, a court of equity may reform and correct it by decree, in a direct action for that purpose; but it cannot be changed or reformed by parol evidence, in an action at law arising upon an alleged breach of such contract, in which the plaintiff seeks to recover damages only.

If an alleged previous oral arrangement is declared upon, as the subsisting agreement, the subsequent written agreement duly executed, the moment it is presented in evidence, destroys the oral one, and takes away its character

as an agreement, entirely; and no amount of parol evidence can give it force or vitality, as against the written version. The written version must be changed, or the contract must stand and be performed as first written.

Where the cause of action alleged is the breach of a subsisting contract between the parties, and the relief asked is a judgment for the amount of damages sustained, leave to amend the complaint, so as to convert the action into one of equitable cognizance, to reform a written agreement, should not be granted, on the trial.

THE complaint in this case alleged that on the 22d day of December, 1858, the defendants were copartners together, doing business at West Troy, in the state of New York. That on that day the defendants, under the name of John Tilley & Son, for value received, agreed to pay the plaintiff the sum of $300, payable in barrel or half barrel heads (to be good merchantable heads;) the barrel heads to be six cents each barrel, and the half barrel heads five cents each half barrel, (the words "barrel" and "half barrel" having been omitted from the memorandum of the agreement by mistake.) The said heads to be packed in good flour barrels at thirty-six cents each, and half barrels at twenty-eight cents each, and delivered, when called for, at West Troy, giving a reasonable notice. The plaintiff further alleged that he did repeatedly call on the defendants at West Troy, and demand the said heads, and gave a reasonable notice, to wit, three months, to deliver the same, and the defendants refused to deliver more than one half the quantity above stated. That the defendants have since, and at all times, refused to pay said sum, or to deliver heads therefor, except for one half the quantity, as above specified, which they have delivered, and amounting to the sum of $150. Wherefore the plaintiff demanded judgment against the defendants for $150 and interest thereon from June 1, 1859, besides costs. The defendants by their answer admitted that they were copartners as in the complaint alleged, and denied each and every other allegation in said complaint contained, except as hereinafter admitted. For a second, further and separate answer, the defendants stated that on or about the 22d day of De-

Bush *v.* Tilley.

cember, 1858, for the purpose of settling certain matters of difference between the plaintiff and the defendants in an amicable manner, and without any other consideration therefor, the defendants agreed to deliver to the plaintiff barrel heads or half barrel heads, at the option of the defendants, to the amount of $300, at the price to be allowed the defendants of six cents for each head of the barrel heads, and at the price of five cents for each head of the half barrel heads ; such heads to be packed in good flour barrels, at the price to be allowed the defendants, of thirty-six cents each barrel, or half barrels at the price of twenty-eight cents each half barrel to be delivered.   That upon the plaintiff's request therefor, the defendants did deliver to said plaintiff, in the year 1859, and before the 1st day of August, in that year, 4505 barrel heads, packed and delivered in eighty-eight barrels accompanying, and delivered with the same, and amounting in all, barrel heads and barrels, to the sum of $301.98, at the price at which the said heads and barrels were so as aforesaid agreed to be delivered, and which were received by said plaintiff, or his agent, upon such delivery and upon said contract, and were in full satisfaction of said contract.   And the defendants denied that they ever agreed to deliver any barrel heads, or half barrel heads, to said plaintiff upon the terms and at the prices stated in the complaint, or any other terms than those above specified ; and they expressly denied that there was any thing due to said plaintiff for or on account of the matters stated in said complaint.   The defendants admitted that the plaintiff, since the delivery by the defendants of the heads and barrels so as aforesaid delivered, had requested from said defendants a further delivery of heads under such contract ;  which delivery the defendants had refused to make, inasmuch as they had, before such request, fully done and performed all that, under and by said contract or agreement, they undertook or agreed to do or perform.   And the defendants alleged that the agreement hereinbefore stated, was the same agreement referred to in the complaint ; that the said

agreement was in writing, and that such written agreement, signed by the defendants, and delivered to the plaintiff, correctly and truly states the agreement between said plaintiff and the defendants, and that there was no omission, by mistake or otherwise, of any of the matters alleged in said complaint to have been thus omitted ; and the defendants alleged that no such matters ever entered into or formed a part of said agreement.

The cause came on for trial at a circuit court held at the city of Rochester, by and before Hon. E. D. SMITH, justice, and a jury, on the 8th day of October, 1866. The counsel for the plaintiff opened the case to the jury, and stated that he would prove the facts substantially as alleged in the complaint. The counsel for the defendants then stated to the court, that upon the opening of the counsel for the plaintiff he moved for a nonsuit. The court thereupon decided that this was an action at law. That on the trial of such action before a jury, the plaintiff could not go beyond the written contract ; that it was the province of a court of equity alone to reform a contract. That the reformation of this contract was not demanded in the complaint, to entitle the plaintiff to such reformation. The counsel for the plaintiff duly excepted to this decision. The counsel for the plaintiff then asked leave to amend the complaint so as to demand equitable relief. The court refused to allow the amendment on the trial at the circuit, but offered to allow the plaintiff to make such motion at special term upon a proper case made ; and the counsel for the plaintiff duly excepted. It was admitted that the trial of the cause was commenced at a former circuit, and on the opening thereof, the same questions were raised as now, but were not disposed of, for the reason that the court adjourned, and that it had been noticed for trial at the present circuit by both parties. The counsel for the plaintiff then asked leave to read the written contract in evidence, being the same set out in the complaint. The court allowed this to be done, and the contract was read in evidence. The

Bush *v.* Tilley.

counsel for the plaintiff then offered to show that by the oral contract between the plaintiff and defendants, the price of barrel heads was to be six cents each barrel, and the price of half barrel heads five cents each half barrel ; and that the words " barrel " and " half barrel " were omitted from the written memorandum by mistake. The counsel for the de-: fendants objected, and the court excluded the evidence, and the counsel for the plaintiff excepted. The counsel for the plaintiff then offered to show by stave dealers and coopers that barrel heads were invariably sold by the pair, and that whenever the price of barrel heads is stated at so much each, the meaning is each pair or each barrel. The counsel for the defendants objected, and the evidence was excluded, and the counsel for the plaintiff excepted. The counsel for the plaintiff then offered to prove that at the time of the contract the market price of barrel heads was six cents each barrel, and of half barrel heads five cents each half barrel, and that the defendants had delivered upon the contract $150 worth only of heading at that price, and had refused to deliver any more. The counsel for the defendants objected to the evidence, and the same was excluded, and the counsel for the plaintiff excepted. The court then nonsuited the plaintiff, with liberty to him to apply, at special term, for leave to amend his complaint ; and the plaintiff's counsel excepted. The court granted thirty days' time to make a case, and ordered the exceptions to be heard in the first instance at a general term.

*J. C. Cochrane,* for the plaintiff.

*Benedict & Martindale,* for the defendants.

*By the Court,* JOHNSON, J. The plaintiff was very properly nonsuited upon the trial. His contract, which was in writing, when he came to introduce it in evidence, was wholly different from the one set forth in the complaint, and only entitled him to one half the quantity of barrel heads

which he claimed, and which one half, he admitted in the complaint had been delivered by the defendants, and received by him. It was clear, therefore, upon his own showing, that he had no cause of action. The contract had not been broken, as he had alleged in his complaint, but had been performed by the defendants. The plaintiff's offer to prove by parol, that it was agreed orally between the parties, before the agreement was reduced to writing, that the price of barrel heads should be six cents each barrel, and of half-barrel heads five cents each half-barrel, and that the words barrel and half-barrels had been omitted by mistake from the writing, was properly rejected. To have allowed it would have been a violation of one of the plainest rules of evidence. The writing was the highest evidence, of what the contract subsisting between the parties actually was, and the proposition was to change it and make it a different contract by inferior evidence. All the rules of evidence, both in law and equity, are in favor of the ruling of the court, on the question presented. It would be idle to cite authorities in support of such a proposition. The other parol evidence offered, to explain, and vary, the written contract, was properly excluded. The contract between the parties, as is apparent, was to be in writing, and was reduced to writing accordingly. Until this contract was altered by the consent of all the parties thereto, or reformed by judicial sentence, there was no other contract subsisting between them than the one thus written. The previous oral negotiations, or stipulations, were all merged in the writing, and did not stand for the agreement, or for any agreement between the parties. If the writing, by reason of any mistake of fact, did not express the agreement, in full, a court of equity might reform and correct it by decree, in a direct action for that purpose ; but it is impossible to change or reform it by parol evidence, in a mere action at law, arising upon an alleged breach of such contract, and seeking to recover damages only. If the alleged previous oral arrange-

Bush *v.* Tilley.

ment is declared upon, as the subsisting agreement, as is sought to be done here, the subsequent written agreeement duly executed, the moment it is presented in evidence, destroys the oral one and takes away its character as an agreement, entirely ; and no amount of parol evidence can give it force or vitality, as against the written version. The written version must be changed, or the contract must stand and be performed as first written. A written contract cannot be thus avoided, and rendered of no effect. The application of the plaintiff's counsel for leave to amend his complaint, upon the trial, so as to convert the action into one of equitable cognizance, to reform the written agreement, was properly denied. An amendment of that character would have changed the nature and cause of action, entirely. The cause of action alleged was the breach of a subsisting contract between the parties, to the injury of the plaintiff. And the relief asked was a judgment for the amount of damages sustained. Had the amendment been allowed, the cause of action would have been the occurrence or existence of a mistake, by means of which the written instrument failed to express fully the real agreement between the parties ; and the relief sought, in that case, would have been the reformation of the written instrument, so that it should express what the parties had agreed upon. As an incident to the main purpose, and gist of the action, the plaintiff might, according to the decisions of this state, had he succeed in the reformation, have recovered his damages also, if there had been a breach of such reformed contract. But the two actions are as essentially unlike as two actions well can be. The amendment would have changed substantially the claim as set out in the complaint. It was clearly, therefore, not a case for the amendment of the complaint at the trial, whatever might have been done upon a motion founded upon affidavit and notice. It is claimed by the plaintiff's counsel that the mistake was averred in the complaint and issue taken upon it in the answer, and that this was the only issue presented by the pleadings ; and that there

was error in refusing to try the issue thus presented. But no such allegation of fact was made in the complaint, in any sense which characterizes the statement of a fact, in a complaint, constituting a cause of action. All that is said on the subject is thrown in by way of parenthesis for the mere purpose, like all other parenthetical sentences, of qualifying or explaining, the sense of the principal statement of fact. To call such an insertion in a pleading, a statement, or averment of a fact, constituting a cause of action, is to ignore or confound all ideas of premises and conclusions which belong to all pleadings, in all actions. If this were allowable, there could be no system or certainty in complaints and answers, and courts would be left to uncertainty and endless speculation as to what was presented for trial.

The cause of action which the facts, as stated, constituted was very plain ; and was not sustained by the evidence. The nonsuit was therefore proper, and a new trial should be denied.

[MONROE GENERAL TERM, September 2, 1867. *J. C. Smith, Welles* and *Johnson*, Justices.]