GILES F. FILLEY, Respondent, *v.* ALONZO D. FASSETT *et al.*, Appellants.

1. *Trade-marks — Infringement on, knowledge of by maker — Injunction.* — In a suit to enjoin defendant from selling "Charter Oak" stoves, bearing a certain trade-mark, the fact that parties in other localities manufactured "Charter Oak" stoves, and sent them into market to compete with plaintiff's manufactures, in no way aids the defense, unless it appears that the plaintiff assented to or acquiesced in such infringements upon his rights.

2. *Trade-mark, statute concerning — Claim filed under — Effect on existing rights.* — The statute concerning trade-marks (Gen Stat. 1865, p. 912) was not designed to weaken or abridge any existing rights, or any future right, to a trade-mark which might be acquired by appropriation and use.

3. *Trade-mark, statute concerning — Claim under, not available for manufacturers without the State.* — A written claim to a disputed trade-mark, filed in the office of recorder of deeds in the county of St. Louis, under the act of March, 1866 (Gen. Stat. 1865, p. 912), can not avail the manufacturer of stoves in another State.

4. *Trade-marks of the goods must point out their true source and origin.* — Any contrivance, design, device, name, symbol, or other thing, may be employed as a trade-mark, which is adapted to point out the true source and origin of

the goods to which said mark is applied, or even to point out and designate a dealer's place of business, distinguishing it from the busines locality of other dealers. But the mark must point out the source and origin of the goods, and not be merely descriptive of the style, quality, or character of the goods themselves; and the fact that the name of a trade-mark, with the combined device, are neither descriptions nor suggestive of the style, character, or qualities of the article manufactured, is one of their virtues as a trade-mark.

5. *Trade-mark pointing out the source and origin of goods, a property acquired.*— By the adoption and use of a name and device adapted to point out the true source and origin of the manufactured article, the manufacturer acquires a property interest therein which the courts will protect.

6. *Trade-mark — Name separated from surrounding device — Use of by other parties an infringement.*— As "Charter Oak" stoves were not conspicuously known by the particular device which surrounded the name upon them, but by the name itself, the use of the name "Charter Oak," separated from the other parts of the trade-mark, amounted to an infringement of the maker's rights.

7. *Trade-mark — Imitation need not be exact or perfect — Deception and fraud need not be proved — Injunction to stop piracy of, when.*— The imitation of the original trade-mark need not be exact or perfect. It may be limited and partial; nor is it requisite that the whole should be pirated. Nor is it necessary to show that any one has in fact been deceived, or that the party complained of made the goods. Nor is it necessary to prove intentional fraud. If the court sees that complainant's trade-marks are simulated in such a manner as probably to deceive customers or patrons of his trade or business, the piracy should be checked at once by injunction.

## *Appeal from St. Louis Circuit Court.*

The facts are fully set out in the opinion of the court.

*Chas. LeR. Moss*, for appellants.

I. A silent acquiescence in use or imitation of a trade-mark, even for a short period, has been deemed sufficient ground for withholding equitable relief. (Flavel v. Harrison, 10 Hare, 467; Gillott v. Esterbrook, 47 Barb. 455.)

II. The respondent can have no exclusive abstract right to the use of the name "Charter Oak," and he can have no property therein, because, before he used it in the combination which composes his trade-mark, it was a name in general use in language by the public. (Burnett v. Phalon, 9 Bosw. 192; Upton's Trade-Marks, 177, 210; Eddleston v. Vick, 23 Eng. Law & Eq. 53, 54; Collins Co. v. Cowen, 3 K. & J. 428; Carnham

v. Jones, 2 Ves. & Beav. 218 ; Knott v. Morgan, 2 Keene, 213 ; Fettridge v. Wells, 13 How. Pr. 388 ; Perry v. Truefill, 6 Bea. 73 ; Gillott v. Esterbrook, 47 Barb. 462, 464 ; Clark v. Clark, 25 Barb. 675 ; Comstock v. White, 18 How. Pr. 421 ; Corwin v. Daley, 7 Bosw. 225 ; Wolfe v. Goulard, 18 How. Pr. 64 ; Stokes v. Landgraft, 17 Barb. 608 ; Amos. Man. Co. v. Spear, 2 Sandf., S. C., 606 ; Kendall v. Davis, 2 R. I. 566.)

III. The name " Charter Oak " does not indicate the origin or ownership of the article manufactured; (see Partridge v. Menck, 2 Barb. Ch. 103 ; Stokes v. Landgraft ; Wolfe v. Goulard, 18 How. Pr. 64 ; Corwin v. Daley ; Amos. Man. Co. v. Spear ; Gillott v. Esterbrook ; Upton's Trade-Marks, 136 ;) and it is only as such a name is effectual in performing the office of the name and address of the manufacturer that it contains the essentials necessary to such protection. (Upton's Trade-Marks, 99, 102, 178, 179.)

IV. Appellants having complied with the provisions of the statutory regulations (Gen. Stat. 1865, p. 912), are regulated thereby. (People v. Lomax, 6 Abb. 39 ; Wheeler v. City of Chicago, 24 Ill. 107 ; Walker's Am. Law, 51 ; Kent's Com. §§ 472–3, note ; id. § 509 ; Moore v. Vance, 1 Ohio, 1 ; McVey v. University, 11 Ohio, 136 ; Commonwealth v. Cooley, 10 Pick. 37 ; Commonwealth v. Marshall, 11 Pick. 351 ; Lakin v. Lakin, 2 Allen, 46 ; Bartlett v. King, 12 Mass. 562 ; Ellis v. Payne, 1 Pick. 45 ; Commonwealth v. Chapin, 5 Pick. 243 ; Nichols v. Squire, id. 168 ; Upton's Trade-Marks, 68–9 ; Dennis on Stat. 523, 530, 531, 638 ; Smith v. Banker, 3 How. Pr. 142 ; Church v. Rhodes, 6 How. Pr. 281 ; Dean of Ely v. Bliss, 5 Beav. 582 ; Moore v. Westervelt, 3 Sandf. 765 ; Smith v. Lockwood, 13 Barb. 209 ; Dudley v. Mayhen, 3 N. Y. 9.)

*S. S. Boyd*, for respondent.

I. The recognition by courts of equity of the right of a party to his trade-mark and its consequent protection by injunction are now so firmly established by the highest authority, as a proper subject for the exercise of the restraining control of a court whenever violated, that it is no longer an open question. (Amos-

keag Manufacturing Co. v. Spear, 2 Sandf., S. C., 606. But what is a trade-mark? It may be "either the name of the maker or symbolical." (2 R. I. 569.) "All marks, forms, or symbols appropriated as designating the origin or ownership of the thing to which affixed" (2 Sandf., S. C., 606; 17 Barb., S. C.; 609), or even a "name, when used as indicating the true origin or ownership of the article." (13 How. Pr. 387; 18 How. Pr. 67; 4 Abb. Pr. 158; 17 Barb. 608; 47 Barb. 463, 466; Howard v. Henriques, 3 Sandf., S. C., 726; Marsh v. Billings, 7 Cush. 322; Burnett v. Phalon, 9 Bosw. 192; Howe v. Howe Machine Co., 50 Barb. 236; Newman v. Alvord, 49 Barb. 599; Gillott v. Esterbrook, 47 Barb. 471; Knott v. Morgan, 2 Keene, 220; Sykes v. Sykes, 3 Barn. & Cress. 543; Clement v. Maddick, 22 Law Rep. 428; Remsen v. Bentall, 3 Law Jour., N. S., 161; Seixo v. Provezende, 1 Ch. App. Cas. 184; Barrows v. Knight, 6 R. I. 434; McAndrews v. Bassett, 10 Jur., N. S., 550; Pidding v. How, 8 Sim. 477; Goutt v. Aleplogliu, 6 Beav. 69; Croft v. Day, 7 Beav. 89; Messerole v. Tynberg, 4 Abb. Pr., N. S., 414; Ainsworth v. Walmsley, 1 Law Rep. 254; Farina v. Silverlock, 39 Eng. Law & Eq. 517; Williams v. Johnson, 2 Bosw. 1; Newman v. Alvord, 49 Barb. 592; 4 Abb. Pr. 158.) *A fortiori*, may a name, "Charter Oak," which is as far removed as can be imagined from any actual representation of the article to which it is applied, be sustained as a trade-mark for a cooking stove, when, in addition, it is coupled with a device of oak leaves, which, of itself, can have no connection with or possible significance in relation to such article.

II. Even if knowledge on the part of respondent of infringements were shown, yet there is here no waiver of any right, such implied consent being at any time revocable. (Gillott v. Esterbrook, 47 Barb. 471.) And the fact that all these parties' have used this trade-mark can not avail these appellants. (Taylor v. Carpenter, 3 Sto. 462; 2 Wood & Min. 8; Coates v. Holbrook, 2 Sandf. Ch. 596.)

III. The statute concerning trade-marks (Gen. Stat. 1865, p. 912) is remedial, providing only a more efficient and summary remedy for the party aggrieved, and neither in terms nor by

necessary implication depriving him of his old remedy at common law, and consequently is but cumulative, leaving the party to proceed either at common law or upon the statute, as he may elect. (Sedgw. on Stat. and Con. Law, 93 ; Clark v. Brown, 18 Wend. 220.) This statute is by its very terms limited in its application to goods "manufactured or prepared" in this State.

IV. There was an infringement on the part of the appellants in using the name "Charter Oak," even without the device of oak leaves. (Amoskeag Manufacturing Co. v. Spear, 2 Sandf., S. C., 607–9 ; Gillott v. Esterbrook, 47 Barb. 469 ; Clark v. Clark, 25 Barb. 76, 79 ; Eddleston v. Vick, 23 Eng. Law & Eq. 53–4 ; Sykes v. Sykes, 3 Barn. & Cress. 543 ; Coates v. Holbrook, 3 Sandf. Ch. 586 ; Seixo v. Provezende, 1 Ch. App. Cas. 194 ; Coates v. Holbrook, 2 Sandf. Ch. 597.) It is not necessary to prove intentional fraud on the part of the defendants to warrant equitable relief. (Coffeen v. Brunton, 4 McLean, 519 ; Dale v. Smithson, 12 Abb. Pr. 238 ; Partridge v. Menck, 2 Barb. Ch. 103.)

CURRIER, Judge, delivered the opinion of the court.

In 1851 the plaintiff employed N. S. Vedder, an extensive stove-pattern maker of Troy, New York, to design and construct for him a set or series of cooking stove patterns. The patterns were made as ordered, and in a form which resulted in the production of a cooking stove of a new and improved interior arrangement and construction, for which Vedder obtained letters patent, which he assigned to the plaintiff. The plaintiff originated and applied to the stove the name "Charter Oak," which was so formed upon the patterns as to produce the name upon the manufactured article, in combination with a sprig of oak leaves. The name and device was employed to distinguish and designate cooking stoves of the plaintiff's manufacture. The manufacture and sale commenced the following year, and has been followed up continuously ever since ; the sales from 1852 to 1867, both years inclusive, amounting to 119,226. These stoves were distributed broadly through the western and southern country, and appear to have been highly popular and successful.

The testimony shows that stoves are usually known in the trade by their distinctive names and designations, such as "Excelsior," "Climax," "Empire," "Charter Oak," etc.; and that they are advertised and bought and sold by such names and designations; that when a stove is favorably received, and acquires popularity in the market and with those who use it, the peculiar name by which it is known and distinguished becomes a matter of importance to the manufacturer, and of great value to him in the prosecution of his business. The extent of the plaintiff's sales of his "Charter Oak" cooking stove indicates its reputation and popularity, and the consequent value to him of the name by which it was known.

But the answer denies that the plaintiff first appropriated and used that name in such connection as indicating the source and origin of the article to which it was applied, and denies that his use of it has been either exclusive or uninterruptedly continuous, and avers that the contrary of all this is true. Upon these issues a large mass of testimony was taken, from which the following facts are deduced: 1. That the plaintiff's appropriation of the name "Charter Oak," as already detailed, was prior in point of time to any similar use of that name by any other parties. The testimony is clear and entirely satisfactory on this point. 2. That notwithstanding such appropriation by the plaintiff, different manufacturers in Cincinnati, and in that region, at different times subsequently to 1852, applied the same name to cooking stoves of their manufacture, but without the consent of the plaintiff in any instance, and without his knowledge, except in two instances. The first of these two occurred in 1854, and was at once checked by the plaintiff, and abandoned by the Cincinnati manufacturer on being apprised of the plaintiff's rights. The other is that of the manufacture of the stoves, the sale of which, with the plaintiff's alleged trade-mark upon them, is sought to be enjoined by this suit; and the suit was commenced immediately after the facts came to the knowledge of the plaintiff. 3. That J. S. &. M. Peckham, of Utica, Oneida county, New York, manufactured in Utica a "Charter Oak" cooking stove, from 1852 to 1857, and then abandoned it, and never

12—VOL. XLIV.

after resumed the manufacture of that particular stove. The Peckhams purchased their patterns for this stove of said N. S. Vedder, Filley consenting to the sale on condition that certain alterations were first made in the patterns. This transaction does not appear to have included specifically the right to use the plaintiff's trade-mark, nor does it appear that Filley was ever made aware that the purchasers in fact used it. The design of the stove was patented, and the transaction with the Peckhams involved the granting to them the right to manufacture, in Oneida county, its patented features. That, with the right to sell in a defined territory, would seem to have constituted the inducement to the purchase of these patterns, rather than others. The particular name which the plaintiff had originated for the stove which he proposed to make does not appear to have been mentioned in the negotiations with the Peckhams, or to have been in the minds of the parties. It ought not, therefore, to be inferred from the mere permission granted to Vedder to sell the modified patterns that the plaintiff licensed or sold out the use of his trade-mark, particularly in a contest with third parties; the Peckhams themselves disavowing all right, claim, or interest in the trade-mark, either as originators or purchasers. 4. That the plaintiff's use of the trade-mark claimed by him has been continuous and uninterrupted since its first adoption by him to the present time.

The fact that parties in Cincinnati, or elsewhere, manufactured "Charter Oak" stoves, and sent them into the market to compete with the plaintiff's manufactures, in no way aids the defense, unless it appears that the plaintiff assented to or acquiesced in such infringements upon his rights; and, as already indicated, there is nothing in the case to establish a dedication or abandonment to the public, on the part of the plaintiff, of his supposed rights of property in the alleged trade-mark. There is no testimony having that tendency except the transaction with the Peckhams, and that is insufficient. In Gillott v. Esterbrook, 47 Barb. 455, it appeared that an imitation of the plaintiff's mark had been in use for many years, and that for twenty years he had issued printed "cautions" to the public on the subject,

implying knowledge on his part of such use; but that was held no acquiescence, although the plaintiff had neglected to institute prosecutions.

The depredations of others upon plaintiff's rights furnish no excuse to the defendants for similar acts on their part. It is rather an aggravation to the plaintiff that others have also injured him, and courts have not shown any disposition to encourage that line of defense. Woodbury, J., in Taylor v. Carpenter, 2 Wood & Min. 8, held this language: "There is something abhorrent in allowing such a defense to a wrong which consists in counterfeiting others' marks or stamps, defrauding others of what had been gained by their industry and skill, and robbing them of the fruit of their good name, merely because they have shown forbearance and kindness." (See observations of Story, J., same case, 3 Sto. 464.)

After this suit was commenced, Rosenbaum & Co., who seem to be the real parties defending against the action, made an attempt to appropriate the disputed trade-mark to their own use, in due form of law, by filing in the office of recorder of deeds, in the county of St. Louis, a written claim thereto, under the act of March, 1866 (Gen. Stat. 1865, p. 912). A certified copy of the paper so filed, declaring that said Rosenbaum & Co. had adopted "Charter Oak" as their trade-mark for stoves manufactured by them, was given in evidence, and relied upon as showing their title to the trade-mark as against Filley, who had never filed any such document. If this proceeding can be made available for the purpose intended, it may be regarded as an entirely new and improved method of disposing of trademark cases, and of appropriating the property of others, the subject of such suits, without risk or inconvenience, and at very slight cost.

A glance at the statute, however, shows that it was intended for no such purpose. It was not designed in the slightest particular to weaken or abridge any existing rights, or any future right, to a trade-mark which might be acquired in the usual way, or to legalize, in any form or measure, piracy in trade-marks. Property in a trade-mark is acquired at common law only by

appropriation and use, and then only of such names, words, and devices as may be held to be adapted to point out the true source and origin of the goods to which such marks are applied. The statute widens the range of selection, and authorizes the mechanic or manufacturer to adopt any name or device he pleases, and to foreclose any controversy on the subject by writing out and filing with the recorder, as the law provides, an accurate description of the name, device, etc., that may have been chosen. But such paper is to be filed in the county where the goods, etc., are to be manufactured or prepared. It is not perceived how this can be made to apply to Rosenbaum & Co.'s stoves, which are manufactured in another State. The statute has no application to the facts of the present litigation. Nor will any fair construction of it warrant the appropriation by one party of an existing trade-mark, the title and ownership of which is in another party.

But it is objected that the words "Charter Oak," with the accompanying device, lack the requisite ingredients or characteristics of a trade-mark, and therefore it is insisted that the plaintiff could acquire no exclusive right to their use for that purpose. The books are full of authorities establishing the proposition that any contrivance, design, device, name, symbol, or other thing, may be employed as a trade-mark which is adapted to accomplish the object proposed by it—that is, to point out the true source and origin of the goods to which said mark is applied, or even to point out and designate a dealer's place of business, distinguishing it from the business locality of other dealers. The mark, however, must possess the requisite characteristics, pointing out the source and origin of the goods, and not be merely descriptive of the style, quality, or character of the goods themselves. Thus, it has repeatedly been held that where the name or device employed had, from use or other cause, come to be descriptive of the goods manufactured or sold, their quality and use, such name or device was ineffectual, and could not be upheld as a trade-mark. It was so as to the letters "A. C. A.," in the leading and famous case of the Amoskeag Manufacturing Company v. Spear, 2 Sandf., S. C., 599; as also in Stokes v.

Landgraft, 17 Barb. 608, and in various other cases cited by the defendants. But these authorities have no application to the mark claimed by the plaintiff; for the name "Charter Oak," with the combined device, in no possible view or application of them, are either descriptions or suggestive of the style, character, or qualities of a cast-iron cooking stove. In their natural significancy, import, or symbolism, or in the use made of them prior to the plaintiff's appropriation of them as a trade-mark, they were as far removed as can well be imagined from conveying any such application or meaning. And that constitutes one of their virtues as a trade-mark. (Fettridge v. Merchant, 4 Abb. Pr. 158; 6 Beav. 66; 4 McLean, 516.)

The general rule respecting the characteristics of trade-marks has already been given. The following names and designations, among many others, have been held to come within that rule: as pointing to a hotel, "Irving House" (3 Sandf., S. C., 726), "Revere House" (7 Cush. 322); as pointing to a manufacturer or dealer, "Cocoaine" (9 Bosw. 192), "Howe" (50 Barb. 236); "Akron," the name of a town (49 Barb. 599); "London Conveyance Company" (2 Keene, 220); "303," the designation of a particular pen (47 Barb. 471); "Bell's Life," the name of a newspaper (22 Law Rep. 428); "Roger Williams Long Cloth" (6 R. I. 434); "Day & Martin" (7 Beav. 89). The name and device selected by the plaintiff were adapted to point out the true source and origin of the stoves to which he applied them, and were therefore possessed of the requisite characteristics of a trade-mark. By the adoption and use of that mark he acquired a property interest therein which the courts will protect. Have the defendants invaded the rights of the plaintiff in this behalf? The defendants accumulated in the St. Louis market a quantity of the Rosenbaum & Co. stoves, with the name "Charter Oak" upon them, which they held for sale as "Charter Oak" stoves. They were aware of the plaintiff's proprietorship of the "Charter Oak" trade-mark, and were proceeding to sell in defiance of plaintiff's rights.

In this condition of things the present suit was instituted, and an injunction granted restraining the defendants from the proposed sale. The only question raised on this branch of the case

is whether the use of the name "Charter Oak," separated from the other parts of the plaintiff's mark, amounted to an infringement of his rights, assuming his ownership of the name as a trade-mark, in combination with the device of oak leaves. On this point there can be no reasonable doubt. The plaintiff's stoves were not conspicuously known by the particular device which surrounded the name upon them, but by the name itself. That was the conspicuous element in the mark. By that name the stove was bought and sold, and known in the western and southern markets. It was the prominent, essential, and vital feature of the plaintiff's trade-mark. That name the defendants and their principals appropriated bodily, and applied it to their stoves, and sought to acquire the sole and exclusive use of it by filing their claim in the recorder's office under the statute. That shows their appreciation of the value of the name, and of their purpose not only to use it themselves, but to exclude the originator of it from its use. Granting Filley's exclusive right, there can be no doubt that the things done and purposed by the defendants were of injurious tendency, and that the name "Charter Oak," as employed by them, was eminently calculated to mislead buyers as to the true source and origin of the stove to which the defendants applied that name. If the name, as used by them, was calculated to mislead, the intention to deceive is to be inferred therefrom. (Fetbridge v. Merchant, 4 Abb. Pr. 159; 4 Mann & Gr. 385.)

The imitation of an original trade-mark need not be exact or perfect. It may be limited and partial; nor is it requisite that the whole should be pirated. Nor is it necessary to show that any one has in fact been deceived, or that the party complained of made the goods. (2 Sandf., S. C., 607; 25 Barb. 79; 23 Eng. L. & E. 53–4; 2 Sandf. Ch. 597.) Nor is it necessary to prove intentional fraud. "If the court sees that complainant's trade-marks are simulated in such a manner as probably to deceive customers or patrons of his trade or business, the piracy should be checked at once by injunction." (4 McLean, 519; 2 Barb. Ch. 103.)

The result is that the judgment of the Circuit Court must be affirmed. The other judges concur.