Drake, Ch. J'.,
dissenting:
I cannot concur in the action of the majority of the court on this motion, and will state the grounds of my dissent.
In doing so, I shall treat the matter as if, besides the motion to amend the petition now passed upon, there' were before us, also, a motion to substitute the administrator of John H. Thomas as claimant; for, upon the allowance of the present motion, the case is put in the position of the administrator of Mary W. Thomas suing to recover a claim in favor of John H. Thomas. The motion for substitution must therefore necessarily follow .and be allowed.
Were there no question of jurisdiction involved — were it *353 merely a matter appealing to tbe discretion of tbe court in furtherance of justice, and conflicting with no statute, nor with any settled legal principles, nor with rights of others, I might readily agree with my colleagues. But as their action is, in my judgment, not only without jurisdiction, but contrary to well-established legal principles, I am compelled to object to it.
The Abandoned and captured property Act required all claims under it to be preferred in this court “ within two years after the suppression of the rebellion”; and the two years expired on the 20th of August, 1868.
On the 19th of that month, there was filed in this court the petition of Mrs. Mary W. Thomas, of Yazoo County, Mississippi, for the proceeds of 112 bales of cotton, of which the petition averred that she was the owner and in possession, at her residence on her plantation in said county, and which were taken from her by United States forces on the 16th of July, 1863,. without her consent and against her will, and turned over to the agents of the Treasury Department; by whom the cotton was sold, and the proceeds paid into the Treasury of the United States..
When that petition was filed, Mary W. Thomas was the-widow and executrix of John H. Thomas. She has since died,, and her administrator has been admitted to prosecute the suit..
This is not a case, such as we have several times had before-us, of letting in a new party in aid of the recovery of a claim preferred in time. In such cases I have always concurred with my colleagues in favor of that proceeding. Nor is it the case of a suit brought by heirs for the proceeds of cotton of their parent’s, and the administrator or executor of the parent is ■ let in to prosecute the claim of the parent’s estate, because the heirs could not legally do so. In such a case I have unhesitatingly sustained the change of parties, as clearly within the spirit of the act. But our action in cases of those descriptions is no precedent for that now taken, for in all of them the claim was still the same throughout, while here the claim let in is a different one from that sued on.
The simple, single, and distinguishing question now presented is, whether, nearly twelve years after the expiration of the time limited by the act for presenting claims here, we have the legal power to let in a claimant and a claim neither of which has, up to this time, ever been here.
*354 This question was before us on a former occasion in this case, on a motion identical with that which has now been allowed, and the court refused to take jurisdiction of the application to substitute John H. Thomas’s administrator for the administrator of Mary W. Thomas. (12 C. Cls. R., 273.)
Notwithstanding that deliberate decision of the court, the thing is now done, as expressed in the opinion of the majority, for the purpose of correcting errors inadvertently made by counsel through an imperfect knowledge of the facts in the case, and not in order to introduce a new cause of action.
I do not agree that it has been shown that such errors of counsel were made; but will treat the subject on the basis of the majority.
Admitting that the lawyer who drew the petition had an imperfect knowledge of the facts in the case; and that th&purpose of the court in granting the motion is merely to correct the in-' advertent errors of counsel; and that the motion is not allowed ■in order to introduce a new cause of action; yet, as I conceive, the incontrovertible fact remains, and cannot be put out of sight, that the court does let in here, nearly twelve years after the 20th of August, 1868, a new claimant and a new cause of action, neither of which was ever here before. John H. Thomas’s representative supplants Mary W. Thomas’s, and John H. Thomas’s claim takes the place of hers. Her claim was pre-fered in time; his was not. Her claim rested on her ownership) of the cotton; his rests on Ms ownership of it. They are, beyond doubt, two several and distinct claims to the same proceeds of cotton, each resting on a different title from the other, and the allowance of either is necessarily fatal to the other; they cannot possibly co-exist.
Thus to substitute an untimely claim for a timely one is not only inconsistent with our previous ruling in this case, but also with other rulings in every case where an attempt has been made to bring in a new claim after the 20th of August, 1868. In no less than seven other instances, besides the one in this case, previously noticed, that attempt has been made, and in ¡ ■each it was frustrated. (Lamar's Case, 7 C. Cls. R., 603; Kidd’s Case, 8 ib., 259; Hill’s Case, ib., 361; Haycraft’s Case, ib., 483; Bellocque, Noblom & Co.’s Case, ib., 493; Mrs. Mount’s Case, 11 ib., 509; Hamner’s Case, 13 ib., 7.)
It would be useful to present here an abstract of each of these 1 *355 cases, showing tbe facts and legal conclusions in each j but it would extend this opinion to too great length. I give, however, in brief, some of the expressions of the court applicable to the present case.
“The act is imperative that the owner shall prefer his claim in this court within two years after the suppression of the rebellion. (The Cowan Infants' Case.)
“ The claimant’s right to institute this suit depended, therefore, upon his doing so within those two years. If he did not prefer his claim within that time, he would- simply have had no right to appear here at all as a claimant under the act of March 12, 1863, and his position would have been just that which he 'would have occupied if that act had not been passed. (Kidd’s Case.)
“The attempt is to bring before the court a claim which was not preferred within the time allowed by law for preferring it. In whatever shape and toay that may he attempted, it cannot receive •our sanction, simply because this court has no jurisdiction of such a claim. (Hill’s Case.)
“The institution of a suit within two years after the suppression of the rebellion is indispensable to the jurisdiction of the court in any case. The law does not authorize any relaxation ■of that requirement for any reason whatever. The legislature has not yet made any provision authorizing parties to sue here after the expiration of that time, and we have no authority, on any ground whatever, to entertain any suit of this kind brought out of the time prescribed by the existiug law.” Haycraft’s Case.)
Mrs. Mount’s Case requires a more extended notice. The similarity between it and the present case is probably as remarkable as could be found between any two cases having different parties and different facts. There the suit was brought in the wife’s name, asserting her ownership; but the evidence tended to prove ownership in her husband; and she moved the court to allow an amendment of the petition letting in her husband’s claim and substituting his administrator as claimant. The court denied the motion in an opinion recounting its previous decisions, and which closed with the following words:
“In the light of these repeated rulings, the motion in this ■case cannot be allowed. It is simply an attempt to secure a standing in court for one who did not prefer his claim within the jurisdictional period of two years after the suppression of the rebellion, and who could not now institute a suit here for the proceeds involved in this case. That the party sought to be introduced was the husband of the claimant, and that she -desires him to take her place, does not materially distinguish *356 the case from that of Hill, above cited, for the fact remains that the claim intended to be brought before us is one which was not preferred in this court within the time prescribed by. law. It is necessarily distinct from and adverse to that which the wife-preferred in her petition, else there were no necessity for removing her from the record. If the cotton was hers, but to enable her to recover the proceeds there must be a joinder of the husband, then such joinder would probably have been allowed if asked for, as in Green’s Case (7 C. Cls. R., 496). Such, however, is not this case. The entrance of the husband here is to be the exit of the wife; and so we should be called upon to render judgment in favor of one who never preferred a claim here until more than five years áfter the time allowed by law for doing so had expired. We have no jurisdiction to allow such a proceeding, and the motion of the claimant must therefore be overruled.”
If any case could arise here for adherence to the doctrine of stare decisis, it is the present one. In those seven cases the court expressed its unanimous judgment. To my mind it is a serious matter for a court to sweep away its previous repeated constructions of an important statute, as it seems to me has now been done.
It were, perhaps, sufficient to rest my dissent solely on those decisions; but there are other considerations which must be expressed.
The requirement that all claims should be preferred here within two years after the suppression of the rebellion, had, of course, a definite purpose, concerning which this court thus expressed itself in Kidd’s Case (8 C. Cls. R., 259):
“That the legislature had a specific purpose in requiring-claims of this bind to be preferred within a specified time cannot be doubted. The purpose seems to us to have been to gather into one place, within a limited time, every claim to the proceeds of captured property, so that the government should, within that time, be in a condition to know, first, the sum total of those claims, and, secondly, how to resist those which might be illegal, false, or unjust.”
To those remarks might have been appropriately added these further ones — that the absolute and immovable character of the limitation of time contained in the act is forcibly shown by the total absence from it of any saving clause, like that in the statute of limitations, in favor of married women, infants, lunatics, and other persons under legal disability to sue. The intent was that every claim should appear here within the prescribed time, regardless of the situs or the status of the person *357 entitled to prefer it, and that none should be allowed, under any plea, to come here after that time. In view of that manifest intent, which shuts the door of this court peremptorily against those classes of disabled persons, whose rights all statutes of limitation so jealously and beneficently guard, is it conceivable that it could ever have been intended by the legislature, that, after the lapse of so many years as in this case, a new claimant and a new claim should be admitted here, on the ground that the lawyer, in drawing the petition in favor of that new claimant’s wife, in her own right, inadvertently erred? When before in the history of any system of jurisprude ncedid the blunder of a plaintiff’s lawyer confer a jurisdiction denied by express law V
If I have made a correct statement of the purpose of the act, it seems to me a patent error to say that it is in furtherance of justice to allow this motion. In judicial proceedings nothing is in furtherance of justice which itself does injustice; and I deem it sound law that no amendment is allowable in the interest of one party which is prejudicial to the rights of another party, unless the prejudice to the latter can, by statutory authority, be ■compensated for by the court’s imposing terms. (Wendell v. Mugridge, 19 N. H., 109; See v. Bobst, 9 Mo., 28; Trego v. Lewis, 58 Penn. St., 463; Crofford v. Cothran, 2 Sneed, 492.)
When, therefore, the act fixed a period within which all such ■claims should be preferred here, so that the government should be in a condition to know how to resist those which were illegal, false, or unjust, the government was entitled to every day of the time after the expiration of that period, to prepare for ■its defense against claims of either of those characters. It matters not that it may not have required every day; the point is, that it was entitled to it, not of grace or favor, but of absolute right, declared by its own express law. That right is totally set aside by allowing a new claim to be asserted here after the expiration of the statutory time. If the claim of John H. Thomas had been here before the 20th of August, 1868, the government could, and doubtless would, have prepared to defend against it, and might have done so successfully. Now, ¡however, it has to meet that claim for the first time, and to defend against it as best it can; only to find, most probably, that important documentary evidence has, in the interval, been lost, -and that witnesses have died, or disappeared, or become obliv *358 ious in memory, whose testimony might easily have been obtained eight or ten years ago, and have sufficed to defeat the claim. But whether so or not, the allowance of this motion disregards and sets at naught a right of the government, and places it in a position of disadvantage. In my opinion, there is no legal authority in the court to do that thing.
But is it in furtherance of justice to the heirs or the creditors of Mary W. Thomas’s estate — who, let it be noted, can have no hearing here — to listen to and allow a motion that pitches her claim over the bar and supplants it with another 1 Have they no rights here which we are bound to consider? Is her administrator entitled to assume that she has no claim — the very point we are placed here to determine upon a trial — and upon that assumption put it beyond the reach of her heirs or creditors ever to get any benefit from the claim? True, the evidence now in might at the trial tend to prove the ownership of the cotton in John H. Tilomas; but what have we to do with that on the hearing of this motion ? And who can say that other evidence might not yet be found to show the falsity or error of that, and establish the right of Mary W. Thomas ? What legal right has her administrator to deprive her estate of the opportunity to get such evidence? In my opinion, none whatever, when the interest of heirs or creditors, not parties to the suit, may thereby be injured or lost.
If, then, it be not in furtherance of justice to either the United States or Mary W. Thomas’s heirs or creditors to allow this motion, but positive injustice to the former, and probable wrong to the latter, it follows that it is only justice in favor of John H. Thomas’s estate that is to be furthered by the present action of the court. And that can be administered, as now asked and granted, only at the expense of both the government and the estate of Mary W. Thomas.
In every case of this kind the very foundation of the claim, without which it cannot for a moment stand, is the claimant’s-ownership of the cotton at the time of its siezure. (Carroll v. United States, 13 Wall., 151; The Elgee Cotton Cases, 22 ib., 180; United States v. Gillis, 95 U. S., 407.) If so, it was the undoubted legal right of the government, in every such case, to be informed in the petition who was the owner at that time;, so that it might investigate that fact, and, finding it falsely alleged, take steps to defeat the claim. And it had the further *359 equally undoubted legal rig-lit, where a petition alleging a particular ownership remained on file until the jurisdictional period expired, to regard that ownership as the one, and the only one, that it would have occasion to investigate or resist; for the act authorized no change, after that, of the foundation of the claim.
All this, every claimant here was bound to know, and every one, doubtless, did know, including Mary W. Thomas. When, therefore, she gave a power of attorney to prosecute her claim, and, under it, her petition was hied averring her ownership of the cotton, and that petition has ever since been in this court, the government had and has a right to have that ownership, and no other, tried and passed upon by this court.
It was urged, as if it were a pivotal fact upon which our decision ought to turn, that the cotton to be named in the amended petition is the same named in the original petition. But that is not a pivotal fact. The identity of the cotton named in the two petitions is of no force, except to show that John H. Thomas’s administrator does not claim the proceeds of a different lot of cotton from that first named. Admit the identity, and it amounts to nothing justifying a recovery, under the amended petition, unless John H. Thomas’s oionership of it he proved. And, in proving that, the foundation of the case is changed; a new and different case is presented; and an ownership is established, of which, up to this time, the government has had no notice, though the law plainly required that it should have had notice of it on or before the 20th of August, 1868.
It was also urged that, when this suit was brought, Mary W. Thomas was the only person in the world who had a right to bring any suit for the proceeds of the cotton in question. That is quite true, whether the cotton was hers or her husband’s ; for she was a dual person, and happened to combine in herself dual rights, under one or the other of which the suit necessarily had to be brought; that is, she was Mary W. Thomas, and also Mary W. Thomas, executrix of John H. Thomas» But the executrix Mary had just the same relation to the individual Mary, in regard to the estate of John H., that any third person, who had been appointed executor, would have had — no more, no less.
Upon the fact of her dual relation to the matter is based the proposition that the person of Mary W. Thomas, being right *360 fully iu court, claiming iu Iier individual right, she, by that fact, becomes entitled to abandon her claim as an individual, and introduce a claim in favor of her dead husband’s estate, for the prosecution of which her husband’s administrator is to be made a party. I propose to subject that propositition to what I regard as a crucial test.
Were Mary W. Thomas now alive and here present, and were she to say to the court, “ I made a mistake in claiming those 112 bales of cotton as mine. They, in fact, belonged to my sister, who lived with me on my plantation. I therefore pray the court to let my petition be amended by averring my sister’s ownership, and making her the claimant in my place” — would not that be a far stronger case than the present, resting as it would, not upon a supposed and inferred error of her attorney, nearly twelve years after he drew the petition, but upon her own frank admission, in open court, of her own mistake? And would the court, on that admission, let her sister in as claimant? I cannot believe it possibe. But if, instead of naming her sister as the owner, she declared that her husband was the owner, and that it was her own mistake in having the suit brought in her name instead of his; would the court let him in? How could it, if it would not, in the other case, let in the sister ? .Would not both husband and sister be equally "strangers to the suit? And if the court would not let in either, why, upon the far weaker case now presented, should it let in the husband’s representative? And if it would not do either, on her personal statement and request, why should it be done when she. is dead, on her administrator’s motion, on an inference of her attorney’s error? Though she combined in herself her own personality as an individual and also her personality as executrix, she was, in her relation to this claim, only Mary W. Thomas, claiming iu her own right. As executrix, she had no sort of relation to it. If John Smith had been her husband’s executor, she could, after the 20th of August, 1868, no more have abandoned her claim and put him in her place to prosecute her husband’s claim, than she could have let in her sister, simply because the husband’s claim, whether prosecuted by her as executrix, or by John Smith as executor, was a wholly different claim from that set up.in her petition, and was not preferred within the period prescribed by law.
But, besides all the foregoing, there comes up a question as *361 to tbe power of tbis court, considered as a court administering tbe common law, to allow sucb an amendment as tbis.
As a general rule, tbe allowance of amendments is witbin tbe discretion of a court, and tbe exercise of tbe discretion is not revisable on error, except in cases of abuse. But it is beld by many courts of bigb authority that there are some amendments which are not within tbe province of judicial discretion, because in law inadmissible.
As bearing- analogously on tbe present question are these two well-sustained propositions: First, that an amendment changing tbe form of action is inadmissible (Butterfield v. Harvell, 3 N. H., 1; Stevenson v. Mudgett, 10 ib., 338; Little v. Morgan, 31 ib., 499; Brown v. Leavitt, 52 ib., 619; Wilcox v. Sherman, 2 R. I., 540; Ramirez v. Murray, 5 Cal., 220; Bush v. Tilley, 49 Barb., 599; People v. Circuit Judge, 13 Mich., 206; Scholfield v. Fitzhugh, 1 C. Cir. C., 108; Ten Broeck v. Pendleton, 5 ib., 464; Barnes v. Quigley, 59 N. Y., 265), and, second, that an amendment is not allowable which would deprive tbe defendant of tbe benefit of tbe statute of limitations where be would otherwise be entitled to it. (The Harmony, 1 Gall., 123; Sicard’s Lessee v. Davis, 6 Pet., 124; Wright v. Hart, 44 Penn. St., 454; Pridgin v. Strickland, 8 Tex., 427; Williams v. Randan, 10 ib., 74; Crofford v. Cothran, 2 Sneed, 492; Van Syckels v. Perry, 3 Rob. [N. Y.], 621.)
But directly in point are two other well settled rules: First, that no amendment can be made adding a new plaintiff (Wilson v. Wallace, 8 S. & R., 53; Chamberlin v. Hite, 5 Watts, 373; Ayer v. Gleason, 60 Me., 207; Marsh River Lodge v. Inhabitants, &c., 61 ib., 585; Morris v. Barney, 1 C. Cir. C., 245; Chouteau, v. Hewitt, 10 Mo., 131), and, second, that the power of amendment does not authorize tbe introduction by tbe plaintiff of a new cause of action. (Milliken v. Whitehouse, 49 Me., 527; Parkman v. Nutting, 59 ib., 398; Butterfield v. Harrell, 3 N. H., 201; Lawrence v. Langley, 14 ib., 70; Carpenter v. Gookin, 2 Vt., 495; Haynes v. Morgan, 3 Mass., 208; Ball v. Claflin, 5 Pick., 303; Ross v. Bates, 2 Root, 198; Eagle v. Alver, 1 Johns. Cas., 332; Van Syckels v. Perry, 3 Rob. [N. Y.], 621; Peck v. Ward, 3 Duer, 647; Cunningham v. Day, 2 S. & R., 1; Farmers’ & M. Bank v. Israel, 6 ib., 294; Ebersoll v. King, 5 Binn., 53; Root v. O’Niel, 24 Penn. St., 326; Gardner v. Post, 43 ib., 19; Trego v. Lewis, 58 ib., 463; Wilbanks *362 v. Willis, 2 Rich., 108; Maxwell v. Harrison, 8 G., 61; Williams v. Hollis, 19 ib., 313; Carter v. Reynolds, 6 Tex., 561; People v. Judges, &c., 1 Doug. [Mich.], 434; Kiphart v. Brennemen, 25 Ind., 152.)
Though the decisions, cited in support of the proposition that anew plaintiff cannot be introduced by amendment, would seem to be enough to sustain it without doubt or question, particularly when no contrary one, unless founded on express statute, can, as I believe, be found in the whole range of American reports, there is one other case which, because of its essential similarity to this, and of its having arisen in a State where the civil law is administered, should receive a distinct mention. In Louisiana, S. D. brought suit, as payee of certain notes, against the maker. The maker pleaded usury and payment, and claimed damages in reconvention. Afterwards, S. T). junior filed a supplemental and amended petition, representing that, through error of his counsel, the suit was brought in favor of S. D.; that S. D. is dead; and long before his death had transferred the notes to S. D. junior, who is now the owner thereof; whereupon S. D. junior asked leave to file this his supplemental and amended petition; which was allowed.
Upon this petition there was a trial, and judgment against S. D. junior, rejecting his demand, and decreeing that the defendant recover from him $2,750 in reconvention.
This judgment was reversed by the Supreme Court of Louisiana, which said: “The amended petition ought to have no effect beyond that of a suggestion of the death of the original plaintiff. It should not be permitted to substitute a new party plaintiff, especially on allegations of ownership in direct conflict with the original petition.” (Duncan v. Helm, 21 La. Ann., 303.)
Sustained by the numerous decisions.cited in support of these four propositions, I would not hesitate to disallow this motion, even if there were in the act no jurisdictional limitation of time. But when, besides them, I find myself, as I believe, sustained by the previous uniform course of our own decisions, and by the letter and spirit of the act from which we derive all our authority in cases of this description, I should do violence to my own convictions if I failed to express, even at this great length, my dissent from a proceeding which seems to me to be both unjust to the government and legally unjustifiable.
*363 Nott, -I.,
delivered the following opinion:
As the diversity of opinion which exists, concerning the power of the court to allow this amendment, shows that the question is a doubtful one, I am of the opinion that, for the purposes of a review in the Supreme Court, the amendment should he allowed as of course, and the question of jurisdiction be reserved for consideration and opinion until a motion for judgment comes to be heard.
This court has always been ready to facilitate a review of its decisions. It was proper for the claimant’s counsel to come in and ask the court to put this matter in such a condition that the question of power can be reviewed by the Supreme Court, and if the request had been made when the former motions were passed upon, the court would doubtless have acceded. But it is not proper, in my opinion, for the claimant to renew a controversy which has been twice decided against him. The motion is as clearly res judicata as anything can be. The objection of the Assistant Attorney-General, that substantially the same application has been twice made, twice argued, twice considered by the court, and twice decided, is certainly well taken. Neither defendants nor claimants should be subjected to the endless vexation of having interlocutory motions repeated over and over again at the will of the defeated party.
' If the amendments now asked by the claimant are allowed as of course, for the purposes of review, the question of jurisdiction will remain open, and can be passed upon when an application for judgment is made, and if the court be against the claimant, be can then carry the case to the Supreme Court, and if it be against the defendants they can likewise appeal and review the question; but if the motion stand overruled, the claimant will be without redress. For this reason, I express no opinion on the question which is now for the third time the subject of argument and decision.