## SHAVER v. SHAVER ET AL.

1. **Trade Mark**: PROTECTION OF: JURISDICTION. Courts of common law and of equity will, in the absence of any statute upon the subject, protect the proprietor of a trade mark in its exclusive use.

2. ——: REQUISITES OF. The exclusive right to a trade mark is acquired by its use, which the law does not require shall be continued for any prescribed length of time.

3. ——: ILLEGAL USE OF. The use by another of a trade mark used to indicate the quality of an article sold, though placed on articles of equally good quality, and without any intention to defraud either the proprietor or the public, will be restrained by a court of chancery, and this, although it is not copied with the fullest accuracy, if the copy is calculated to deceive and may be taken for the original.

4 ——: ——: RULES APPLIED. Where the plaintiff, who was a manufacturer of wagons for sale, had uniformly for some years painted upon the sides of the wagons made by him the words "Shaver Wagon, Eldora," it was held that the painting of the same words upon wagons made and offered for sale by the defendants, in the same general style as those upon plaintiff's wagons, was an infringement of his rights, which would be enjoined by a court of equity.

*Appeal from Hardin Circuit Court.*

MONDAY, JUNE 21.

ACTION in chancery to enjoin defendants from the use of a trade mark. Upon the final hearing, a decree was entered granting the relief sought in plaintiff's petition. Defendants appeal. The facts of the case appear in the opinion.

*E. W. Eastman, W. V. Allen* and *Brown & Binford,* for appellants.

*Porter & Moir* and *Huff & Reed,* for appellee.

BECK, J.—I. Counsel for defendants maintain that the right to the exclusive use of a trade mark, by the person first adopting it, is not recognized by the common law, and that, in the absence of statutes, the courts will not afford relief to the person injured,

1. TRADE MARK: protection of: jurisdiction.

by awarding damages for the unauthorized use of the trade mark, or restrain, by injunction, such use. This position finds no support in the books. For three hundred years the common law has recognized the right of the proprietor of a trade mark to its exclusive use, and has awarded damages for the deprivation of such use. *Southern v. How*, Popham (King's Bench), 143–4.

The right has been, without interruption, recognized and protected by the courts of England and the United States from that day to the present, in the absence of statutes declaring the existence of such right, or providing regulations for its exercise, and remedies for its deprivation. Many cases involving the subject have been decided by the courts. They are too numerous to be cited here. For a collection thereof see American Trade Mark Cases, by Rowland Cox.

The jurisdiction of chancery to restrain the use of a trade mark, without the consent of the proprietor, was first recognized at a later day. In 1742 Lord Hardwicke denied it (*Blanchard v. Hill*, 2 Atkyns, 484), but within the last fifty years it has been repeatedly exercised in England and in this country. I have not found an American case denying it.

It has been expressly held that the right to the exclusive use of a trade mark, where statutes exist regulating and protecting it, does not depend upon such statutes. *Derranger v. Plate*, 29 Cal., 292; *Filley v. Fassett*, 44 Mo., 173.

Using the language of AMES, Chief Justice, in *Barrows v. Knight*, 6 R. I., 434, we conclude that "it never could have been a question that a designed imitation by the defendant of the trade mark of the plaintiff, whereby the former fraudulently passed off his goods in the market as goods manufactured by the latter, and to his injury, would support an action."

We may express with equal positiveness the conviction that the rule is firmly settled that chancery will, in a proper case, by injunction, protect the proprietor of a trade mark in its exclusive use.

II.   Chancery affords protection to the exclusive use of a trade mark upon the ground of the injury sustained by the proprietor when it is appropriated by another, and of the fraud and deception practiced upon the public.   The law will never fail to protect a citizen in the enjoyment of the fruits of his industry and enterprise.   When through these he has acquired a reputation which brings him trade and patronage, he is entitled to its benefits as fully as to the enjoyment of property acquired in the same manner.   The means and instruments he adopts to indicate to the public his place of business and the goods he manufactures and sells, whereby trade is acquired, cannot be appropriated by another.   The people who have bought his goods and given him patronage, or who have a knowledge of the reputation he has acquired in his business, and, therefore, desire to purchase the articles he manufactures or sells, ought not to be deceived and induced by fraud to trade with another.   Chancery will restrain the injury to the trader and public by such fraudulent acts.

III   We will briefly state certain principles and rules pertaining to the subject of trade marks, which, in our opinion, are applicable to the case before us.

2. ——: requisites of.

A trade mark is a name, sign, symbol, mark, brand, or device of any kind, used to designate the goods manufactured or sold, or the place of business of the manufacturer or dealer in such goods.   The exclusive right in a trade mark is acquired by its use, which the law does not require shall be continued for any prescribed time.

IV.   The trade mark is often intended to indicate the quality of the goods, and it is unlawful to appropriate it to indicate goods of a quality equal to those manufactured or sold by its proprietor.   *Taylor v. Carpenter*, 11 Paige 292; *Coats v. Holbrook*, 2 Sandf. Ch. R., 586.

3. ——: illegal use of.

V.   The use of a trade mark ignorantly or innocently, with no intention to defraud or deceive the proprietor or the

public, will be restrained by chancery. *Millington v. Fox*, 3 *Mylne & Craig*, 338; *Cartier v. Carlisle*, 31 Beavan, 292.

VI.  In order to authorize the interference of chancery, it is not necessary that the trade mark should be copied with the fullest accuracy.  An imitation which varies from the original, in some particulars, will be restrained,  The rule is, that if the imitation is calculated to deceive and may be taken for the original, its use will be restrained.  *Filley v. Fassett*, 44 Mo., 173; *Boardman v. The Meriden Britania Co.*, 35 Conn., 402; *Falkenburg v. Lacy*, 35 Cal., 52; *Woodward v. Lazer*, 21 Cal., 448; *Sexo v. Proevzende*, S. R., 1 Ch. App., 192; *Witherspoon v. Carrie*, S. R., 5 Eng. and Irish App., 508; *Bradley v. Norton*, 33 Conn., 157; *Davis v. Lendall*, 2 R. I., 566.

In support of the doctrines we have above stated, see the cases cited in the notes in 2 Hilliard on Torts, p. Ch. 2, *et seq.;* 2 Story's Eq. Jursp. (Eleventh Ed.), Sec. 951; High on Injunctions, Chap. XVI; Addison on Torts (Fourth Ed.), p. 874, *et seq.*, and many decisions collected in American trade mark cases, by Rowland Cox.

VII.  We are now required to determine the facts of the case before us, which we find to be as follows:  The plaintiff has been for many years engaged in the manufacture of wagons at Eldora.  His business has never been extensive, and his sales are largely confined to the county in which he lives.  The business, for a time, was prosecuted by co-partnerships composed of plaintiff and the defendants, his brothers, and another person.  Upon the dissolution of these co-partnerships, plaintiff continued the business and acquired all the property of the firm.  For several years the plaintiff conducted the business on his own account, and some time before his brothers commenced business for themselves, they had been employed by plaintiff.  In 1874. plaintiff adopted as a trade mark the words, "Shaver Wagon, Eldora," which was at first, with some variation in form, painted conspicuously on all wagons manufactured and sold

by him.   He adhered to a general style of work and painting, and his trade mark for the last few years has been painted upon his wagon in substantially the same form and manner. The defendants, more than two years after they ceased to be co-partners of plaintiff, commenced the manufacture of wagons and painted thereon the identical words used as a trade mark by plaintiff.   They changed somewhat the form of inscribing the words, and painted their own initials near the trade mark.   The wagons in general style, and in painting, resembled those manufactured by plaintiff, and were not inferior thereto.   They did but little at the business before this suit was commenced, constructing and selling but one or two wagons.

We are clearly of the opinion that the trade mark of plaintiff is used by defendants with so little variation that their wagons would be readily taken to be of the manufacture of plaintiff.   The imitation used by defendants, we have no doubt is calculated to deceive customers, and thus defraud them and injure and defraud plaintiff.   Applying the doctrines we have above announced, we are of the opinion plaintiff has made out a case calling for the interposition of the power of equity to enjoin defendants from the further use of his trade mark.

VIII.   It is said that plaintiff is not entitled to the relief he claims, for the reason that defendants, before the suit was commenced, had made but one or two wagons.   But this objection is completely answered by the consideration that defendants, in their pleadings, admit the use of the trade mark, in the manner we have above stated, and, as we understand the records, have continued to use it since the suit was commenced, and claim that they have a right so to do.   They propose to continue its use.   Under these circumstances, equity will restrain their further use of plaintiff's trade mark.

IX.   The court below excluded evidence offered by defendants tending to establish the following facts:  That the "scroll work" upon which plaintiff caused his trade mark

to be painted, was generally used in painting wagons; that plaintiff had never called the words, "Shaver Wagon, Eldora," his trade mark, and had not instructed his partner to put it on; that the wagon sold by defendants was disposed of without regard to the trade mark;" that the painting of defendant's wagons is readily distinguishable from that of plaintiffs, and that they are different in size; that defendant's wagons were not sold because of any notoriety on account of the trade mark, and that defendants had not sought to increase their sales by means of the trade mark.

When it is remembered that the gist of the action is the use of plaintiff's trade mark and not the imitation of the wagons he constructed; that no formal act or declaration is necessary in order to adopt a trade mark, which rests upon use alone; that if defendants, without fraud and innocently, used plaintiff's trade mark, when these things are remembered, it will be readily seen that the proposed evidence was correctly excluded. It may be further remarked, that if defendants honestly expected no advantage in the sale of their wagons by the use of the trade mark, they would not have attempted to appropriate it, and would not tenaciously cling to its use at the expense of a lawsuit. If, as they say, it is a matter of so little importance they have acted a very unwise part in incurring so much expense in efforts to establish their right to use plaintiff's trade mark.

In our opinion, the decree of the court below is in accord with the law and facts of the case. It is, therefore,

AFFIRMED.