**Application of HONEYWELL, INC.**

**Patent Appeal No. 8994.**

United States Court of Customs
and Patent Appeals.

May 23, 1974.

Leroy Rice, atty. of record, for appellant; Molinare, Allegretti, Newitt & Witcoff, Chicago, Ill., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents, R. V. Lupo, Associate Sol., Eugene F. Desmond, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

Honeywell Incorporated appeals from the decision of the Trademark Trial and Appeal Board, 169 USPQ 619, refusing

registration of a configuration of a portion of a thermostat, as a trademark for thermostats, on the Principal Register.

The application,[1] alleging use since 1952, seeks registration of the following:

A smooth outer cover ring, or "decorator ring," and a center disc positioned concentrically therein are depicted. These features were a portion of the subject matter of an expired design patent[2] which the appellant had owned.

The trademark examiner had refused registration on the ground that the configuration was incapable of functioning as a trademark within the meaning of the statute since the outer ring and center disc were merely functional in nature and dictated by the configuration of the thermostat itself. The examiner contended that the configuration "is so fundamentally functional and utilitarian that the matter applied for is incapable of acquiring a legal recognizable secondary meaning or of becoming an enforceable trademark." The examiner had also mentioned that "[t]he fact that applicant has secured a design patent

. . . covering the shape does not enhance applicant's attempt to secure trademark protection for the same subject matter."

The board chose to rely only upon appellant's prior design patent to sustain the examiner's refusal of registration and stated:

Apart from any consideration as to whether applicant's configuration is essentially functional in character because it is formulated or designed to cover a round thermostatic device and is so arranged that the essential operating and temperature controlling and indicating mechanisms are visible to the operator thereof, registration must be refused on the ground that the registration sought by applicant would extend the monopoly which the applicant has enjoyed for a period of fourteen years from the issuance of

1. Serial No. 306,776, filed September 6, 1968.

2. Des.Pat.No. 176,657, patented January 17, 1956, for a term of 14 years. However, at

the time of filing their application for registration of a trademark, the design patent had not expired.

the design patent on January 17, 1956. Applicant's design patent, which expired during the pendency of the subject application, protected applicant for the fourteen year period against another's making, using or vending a control instrument including a thermostat utilizing the ornamental design disclosed therein, admittedly substantially identical to the subject matter of the instant trademark application. Under Section 7(b) of the statute, a registration on the Prínciple [sic] Register affords the owner thereof, inter alia, prima facie evidence of the registrant's ownership of the mark and exclusive right to use the mark in commerce in connection with the goods recited therein, and hence by reason thereof, the right to exclude others from the use and registration of the same or a similar design for similar goods during the life of the registration which is subject to renewal every twenty years. Since applicant's design patent expired in 1970, it is apparent that the issuance of a registration for the same subject matter, including the same mark and goods, would be inconsistent with the right of others under the terms of the patent grant to make fair use of the ornamental design for control instruments including thermostats after the expiration of the patent and that it would serve, in effect, to extend the protection accorded the patented design contrary to the purpose and intent of the patent law.

Before the board, appellant had argued that the decision of In re Mogen David Wine Corporation, 328 F.2d 925, 51 CCPA 1260 (1964), was determinative of the "extension of monopoly" issue upon which the board later based its decision. In *Mogen David* this court held that trademark rights exist independently of the rights resulting from the grant of a design patent, and that these trademark rights do not extend the patent rights. However, the board distinguished *Mogen David* from the case before it by stating:

> The Mogen David case relied on by applicant is clearly distinguishable from the instant case in that the applicant was seeking to register the subject matter of the design patent, namely, the design or configuration of a bottle or container for a product contained therein, namely, wine and not for a bottle or container, per se, whereas here applicant is seeking to register the design of the product for the product itself.

## OPINION

### Request for Dismissal

■ Before addressing ourselves to the merits of this appeal, we must first consider a jurisdictional issue raised by the solicitor. Since this is a jurisdictional matter it is proper to raise it at any time. The solicitor calls to our attention that appellant has presented only one reason of appeal, which concerns the alleged error of the board in its interpretation of the *Mogen David* decision as applied to the facts of this case. Since the examiner had refused registration on the additional ground of functionality, which the board's decision did not explicitly reverse, the solicitor, apparently relying upon the rule formulated in In re Wagenhorst, 64 F.2d 780, 20 CCPA 991 (1933) and expounded upon in In re Boyce, 144 F.2d 896, 32 CCPA 718 (1944), submits that the examiner's position on that issue must be viewed as having been affirmed by the board. Accordingly, the solicitor urges that appellant's failure to file a reason of appeal[3] challenging the propriety of that ground of

---

3. The reason of appeal filed reads:
"The board erred in its decision by narrowly construing the decision in In re Mogen David Wine Corporation, [328 F.2d 925, 51 CCPA 1260] 140 USPQ 575 (CCPA 1964), to wit, that the subject matter of a design patent may be a trademark for goods other than the design patent subject matter, but may not be a trademark for the design patent subject matter."

refusal does not fulfill the minimum requirements of the statute [4] for perfecting appeals to this court. Therefore, the solicitor, citing two additional patent cases, In re Gruschwitz, 320 F.2d 401, 50 CCPA 1498 (1963) and In re Dichter, 110 F.2d 664, 27 CCPA 1060 (1940), requests dismissal of this appeal.

■ We hold this request to be without merit inasmuch as the instant case is not a patent case; nor does it involve multiple rejections which were presented in the cases relied upon by the solicitor. There was a single refusal of registration of a single alleged mark by the examiner. The board affirmed that refusal. The single reason, though perhaps not artfully drawn and unduly specific in referring to the *Mogen David* decision, when carefully read unquestionably states that the board erred in its *decision* that appellant cannot have a trademark registration for subject matter on which it had a design patent because *such subject matter* cannot be a trademark. The facts of this case which are of record show that what appellant is seeking to register was a *portion* of the subject matter of its design patent. The reason of appeal clearly brings before us the question of the registrability of that subject matter. The appeal, after all, is from the *decision* of the board, not the supporting reasoning in its opinion. There was one decision of unregistrability here and one reason of appeal —even though unnecessarily detailed— which is enough to bring it before us.

In recent years this court has liberally construed the requirement for reasons of appeal and a continuance of that policy dictates that we decline the Patent Office invitation to dismiss on a technicality.

4. 15 U.S.C. § 1071

5. In In re Deister Concentrator Co., 289 F. 2d 496, 501, 48 CCPA 952, 962 (1961), we stated that:
"* * * it being basic to the patent system that the public may copy when the term of a patent comes to an end, with certain exceptions. However, the right to

For these reasons we hold that appellant's single reason of appeal was sufficient to perfect its appeal to this court.

*Extension of Patent Rights*

Since the board predicated its decision solely upon appellant's prior design patent and expressed no opinion on the examiner's functionality reasoning, and that issue has not been briefed here, we treat herein only the design patent issue and intimate no view on whether or not appellant's trademark is functional.

The solicitor has presented for our consideration a chain of authorities— Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118 (1896); Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); and Scott Paper Co. v. Marcalus Manufacturing Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47 (1945)—which is said to stand for the principle that under the patent law, upon the expiration of a patent, the public may freely exercise its right to make, use, and sell the subject matter that was once protected by the patent grant. Therefore, the solicitor argues that registration of appellant's trademark would serve to extend the rights to exclude that had existed during the life of appellant's patent, contrary to the purpose and intent of the patent law. While we agree that the above principle is substantially correct;[5] the application of that principle will not always lead to the result urged by the solicitor. We believe the solicitor has failed to draw a crucial distinction between functional subject matter disclosed in utility patents and subject matter disclosed in design patents, which may or may not be functional, in the context of their relationship with trademarks. We believe

copy is not derived in any way from the patent law; it is a right which inheres in the public under the general law except to the extent the patent law may remove it. The same is true of copyrights. When a temporary incursion on the public right ends, the public right remains. No new right is born."

that the decisions of this court have correctly recognized this distinction and are in harmony with the holdings of the *Singer, Kellogg* and *Scott Paper* decisions relied upon by the solicitor.

When federal trademark rights have been sought for functional subject matter disclosed in a utility patent, the decisions of this court, notably Best Lock Corp. v. Schlage Co., 413 F.2d 1195, 56 CCPA 1472 (1969), In re Shenango Ceramics, Inc., 362 F.2d 287, 53 CCPA 1268 (1966), In re Shakespeare Company, 289 F.2d 506, 48 CCPA 969 (1961), and In re Deister Concentrator Company, Inc., 289 F.2d 496, 48 CCPA 952 (1961), indicate that the acquisition of such rights will not be allowed in view of the "overriding public policy of preventing their monopolization, of preserving the public right to copy." In re Deister Concentrator Company, Inc., *supra*. These decisions turned upon the question whether or not the subject matter, for which federal trademark protection was sought, was of a functional nature, *i. e.*, in essence utilitarian or dictated for reasons of engineering efficiency. The utility patent present in each of those cases was used as *evidence* of the functionality of the involved subject matter. Since the subject matter was found to be functional, registration was denied. The results reached in these cases are clearly consistent with the principle of *Singer, Kellogg* and *Scott Paper*.

Where the solicitor and this court differ is in the application of the principle of *Singer, Kellogg* and *Scott Paper* when federal trademark rights are sought for *non-functional* subject matter which may be disclosed in a design patent. The solicitor urges that the same result—a refusal to register the subject matter as a trademark on the ground of an impermissible extension of rights—must occur under these circumstances. We cannot agree with this result. In *Mogen David* we explicitly held:

In our opinion, trademark rights, or rights under the law of unfair competition, which happen to continue be-

yond the expiration of a design patent, do not 'extend' the patent monopoly. They exist independently of it, under different law and for different reasons. The termination of either has no legal effect on the continuance of the other. When the patent monopoly ends, it ends. The trademark rights do not extend it.

 That holding recognized the clear distinction between the underlying bases of the federal trademark and design patent laws. Federal design patent laws were created to encourage the invention of ornamental designs. Federal trademark laws, which are independent in origin from the design patent laws, seek to prevent the public from encountering confusion, mistake, and deception in the purchase of goods and services and to protect the integrity of the trademark owner's product identity. With that distinction in mind, this court decided that the public interest—protection from confusion, mistake, and deception in the purchase of goods and services—must prevail over any alleged extension of design patent rights, when a trademark is non-functional and does in fact serve as a means to distinguish the goods of the trademark owner from those of others.

We do not believe, as is urged by the solicitor, that the *Singer, Kellogg* and *Scott Paper* decisions require a different result than that reached by us in *Mogen David*. In those cases the Supreme Court was concerned not with non-functional features of expired design patents, but rather *functional* features of utility patents and whether or not the public domain acquired the subject matter of those utility patents upon their expiration. However, the solicitor submits that the principle of *Kellogg* is also applicable to design patents insofar as the Kellogg Company, in addition to its utility patents, at one time had a design patent on the pillow-shape of its shredded wheat biscuit.

But in view of the Court's analysis of the pillow-shape of the design patent, the mere existence of the design patent does

not compel the result urged by the solicitor. With respect to preserving the public right to copy the pillow-shape, the Court relied heavily upon the fact that the patented machines could only produce shredded wheat biscuits in the pillow-shape.

The Court further stated that:

> * * * the pillow-shape must be [permitted to be] used [by others than Kellogg] for another reason. The evidence is persuasive that *this form is functional*—that the cost of the biscuit would be increased and its high quality lessened if some other form were substituted for the pillow-shape. [Emphasis supplied.]

That analysis was not predicated upon the mere fact that the pillow-shape was claimed in a design patent, but rather that the pillow-shape was a functional feature which was the necessary result of following the teachings of the utility patent. Therefore, the functional pillow-shape went into the public domain upon the expiration of the patents. The analysis is precisely the same as that found ·in the decisions of this court, e. g., *In re Shakespeare Company, supra,* wherein federal trademark rights were also denied for functional features.

Furthermore, in *Kellogg* the asserted trademark rights in the name "Shredded Wheat" were, in essence, denied protection, not because of the expired patents, but rather because the name had become a generic name for the product, which could thus no longer indicate the origin of the goods and serve as a trademark for the goods. The Court stated:

> [t]he plaintiff has no exclusive right to the use of the term "Shredded Wheat" as a trade name. For that is the generic term of the article, which describes it with a fair degree of accuracy; and is the term by which the biscuit in pillow-shaped form is generally known by the public. Since the term is generic, the original maker of the product acquired no exclusive right to use it.

Likewise, in *Singer,* the Court found the involved trademark to be a generic description of the sewing machines sold under the trademark.

■ For the foregoing reasons, we believe that the *Kellogg, Singer* and *Scott Paper* decisions cannot be properly construed to be applicable to the situation of *Mogen David,* wherein trademark rights were sought for *non-functional* features which were the subject matter of a design patent. Nor do we believe that the language of the opinions in Sears, Roebuck & Company v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), which were concerned with the conflict between a state's law of unfair competition and the federal patent law, is pertinent to the present issue of registrability for federal trademark protection.

Because the board's decision rested upon the erroneous view that a conflict existed between design patent rights and the right to register a trademark, no useful purpose would be served by a discussion of the solicitor's other contentions, including those directed toward the board's distinguishing *Mogen David* from the instant case, since those contentions in essence stem from that same erroneous view.

## CONCLUSION

In view of the foregoing, we hold that the board erred, as a matter of law, in its reasons for refusing registration of appellant's configuration as a trademark for thermostats. Because the board did not express any views on the functionality reasoning relied upon by the examiner, we believe it should be provided an opportunity to do so.

The case is remanded to the Trademark Trial and Appeal Board for further proceedings not inconsistent with this opinion.

Remanded.

**1350**

RICH, Judge (concurring).

While I agree with the remand of this case to the board for its views on the examiner's functionality rejection, without any decision by us on the merits at this time, I am constrained to concur only in that result because of some of what the majority opinion says.

I do, however, fully agree with the majority opinion's views on the jurisdictional, or reason of appeal, issue.

I also fully agree with its disapproval of the board's reasoning and I adhere to all that we said in our 1964 *Mogen David* opinion.

The majority opinion states that the remand is to give the board an "opportunity" to express its views on "the functionality reasoning relied upon by the examiner."

What is meant by "the functionality reasoning" of the examiner is not too clear. In his Answer, the examiner reasoned in various ways. He held that what is sought to be registered is "incapable of performing the function of trademark"; that it "comprises merely the basic, circular shape of the thermostat"; that "the details claimed as a mark are merely circular bands, dictated by the shape of the instrument"; that they are "without such distinguishing characteristics as to function as a trademark"; that "is merely the configuration of the goods"; that it "is basically functional in nature"; that it is "not capable of indicating origin or serving as a trademark"; that "only de facto secondary meaning, if any, has been acquired"; that it "is so fundamentally functional and utilitarian that the matter applied for is incapable of acquiring a legally recognizable second meaning or of becoming an enforceable trademark"; and that "the shape is in essence utilitarian."

The examiner relied on the preamble to Sec. 2 of the Trademark Act (15 U.S.C. § 1052) and on Sec. 45 (15 U.S.C. § 1127), presumably the definition therein of "Trademark." He also relied on In

re Deister Concentrator Co., 289 F.2d 496, 48 CCPA 952 (1961), as involving "just such a situation" as this case presents.

I deem all of the foregoing to be encompassed by the term, "the functionality reasoning."

Because the board—although it has already had the "opportunity to do so"—chose not to discuss or rely on any of the foregoing reasoning of the examiner in affirming his rejection, the *appeal to us* was virtually based *only* on the board's own design patent expiration ground and the parties therefore did not brief the "functionality" question. All appellant's brief says on the subject is that *there is no "functionality" issue here* and then makes the bald assertion:

It is Honeywell's position that the trademark elements are so clearly non-functional as to be self-evident to the court.

If the case had come here with a "functionality" issue in it *and that issue had been briefed*, I would feel that, since it is a question of law, we should decide it now and not remand. But, in the present posture of the case, I think the board should be required to state the extent, if any, of its agreement with the examiner's views so that appellant can then fully brief this issue on the basis of a board decision and the Solicitor can respond thereto. I regard the non-functionality urged by appellant as anything but "self-evident."

I further regard the so-called "functionality reasoning" of the examiner as involving distinct questions: (1) Is the subject matter sought to be registered a "trademark" within the meaning of the statute? (2) In what *way* is that subject matter functional or utilitarian, factually or legally? (3) Following Diester-type reasoning, if there is *de facto* "secondary" meaning, because no competitors are making "little round" thermostats, should it be given *de jure* recognition which would prevent them from doing so?

With respect to appellant's contention that what is sought to be registered is merely "a portion of the configuration of a thermostat *cover*," (my emphasis) I call attention to appellant's own application description reading:

> The trademark * * .* consists * * * of the * * * combination of an outer cover ring of a thermostat and a center disc positioned concentrically within said ring, *said ring and disc comprising* a portion of the configuration *of a thermostat.* (My emphasis.)

The application drawing shows the disc to be transparent and the specimen shows it as a rotatable control dial serving as a window through which a thermostat scale and a temperature setting scale are visible. These are not merely parts of a cover. On this point, I note the board's statement, made in the course of its attempt to distinguish *Mogen David*, that appellant "is seeking to register the design of the product for the product itself." The product is a thermostat. The design constitutes the appearance of practically the entire visible portion of an object commonly known as a thermostat.

I think it appropriate to point out for consideration the fact that functionality, ornamental appearance, and good industrial design are matters which are closely intermingled. The very best of modern product design has long been called "functional design." See, for example, the definitions of "functional" and "functionalism" in The Random House Dictionary of the English Language (1967) and in Webster's Third New International Dictionary.

I discussed at great length the principles which I see as applicable to this case thirteen years ago in *Deister*. As to the board's action in the present case, I advert to the statement in *Deister* that "we are not seriously concerned with whether he who claims trademark rights of *unlimited* duration now has or did have patent protection, or what that protection was." I also discussed how we must go about determining when subject matter such as that here involved will be regarded as a trademark, when it will not, and why it will not. But these are points on which, as related to the facts of this case, which differ from *Deister* facts, we should be briefed before we decide on registrability.