MIDWEST INDUSTRIES, INC.,
Plaintiff–Appellant,

v.

KARAVAN TRAILERS, INC.,
Defendant–Appellee.

No. 98–1435.

United States Court of Appeals,
Federal Circuit.

May 5, 1999.

Thomas J. Oppold, Henderson & Sturm, Des Moines, Iowa, argued for plaintiff-appellant. With him on the brief were H. Robert Henderson, and Michael O. Sturm. Of counsel was Curtis A. Bell.

G. Brian Pingel, Pingel & Templer, P.C., West Des Moines, Iowa, argued for defendant-appellee. Of counsel on the brief was Don Cayen, Fond du Lac, Wisconsin.

Before SCHALL, Circuit Judge, SMITH, Senior Circuit Judge, and BRYSON, Circuit Judge.

MAYER, Chief Judge, RICH, Circuit Judge, SMITH, Senior Circuit Judge, NEWMAN, MICHEL, PLAGER, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, and GAJARSA, Circuit Judges, have joined Part II–A of this opinion.

BRYSON, Circuit Judge.

Midwest Industries, Inc., appeals from the district court's order granting summary judgment to Karavan Trailers, Inc., on Midwest's state and federal trademark claims. The district court dismissed Midwest's claims, holding that they are barred by federal patent law. We hold that we will apply Federal Circuit law in determining whether patent law conflicts with other federal statutes or preempts state law causes of action. In so holding, the court overrules, en banc, those decisions in which we have held that regional circuit law governs in resolving such issues. On the merits, we hold that the record does not support the district court's order of summary judgment foreclosing Midwest from asserting its nonpatent claims. We therefore reverse the partial summary judgment in Karavan's favor and remand the case for further proceedings.

I

Midwest and Karavan manufacture and sell trailers for hauling watercraft behind automobiles. As is typically true of watercraft trailers, a winch mounted on a winch post at the front of each trailer serves to draw the watercraft onto the trailer and secure it in the correct position for traveling.

Midwest brought suit against Karavan in the United States District Court for the Southern District of Iowa, contending that Karavan's use of curved winch posts in certain of its watercraft trailers infringed two Midwest design patents and violated Midwest's rights under federal and state trademark law. In the nonpatent counts, Midwest alleged that Karavan committed trade dress infringement by copying its curved winch post design, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Iowa trademark statute, Iowa Code § 548. Midwest also alleged that Karavan's conduct violated Midwest's rights under the Iowa common law of trademarks.

Midwest is the exclusive licensee of U.S. Patent No. 5,518,261 (the '261 patent), which discloses a curved winch post as part of a trailer. In claim 10, one of the dependent claims, the '261 patent recites,

as a limitation, a winch post that "curve[s] forwardly and upwardly." Midwest has not alleged that any of Karavan's trailers infringe the '261 patent.

In the district court, Karavan filed a motion under Fed.R.Civ.P. 12(b)(6) to dismiss Midwest's nonpatent claims. Karavan argued that the nonpatent claims failed to state a claim on which relief could be granted because the '261 patent discloses and claims a curved winch post, and that it would improperly extend Midwest's patent rights to provide additional state and federal protection for the curved winch post design. The district court granted the motion, citing as its principal authority the Tenth Circuit's decision in *Vornado Air Circulation Systems, Inc. v. Duracraft Corp.,* 58 F.3d 1498, 35 U.S.P.Q.2d 1332 (10th Cir.1995).

In the *Vornado* case, the Tenth Circuit refused to accord trade dress protection under section 43(a) of the Lanham Act to a fan having a grill with spiral vanes. The court based its ruling on the fact that the plaintiff held a utility patent that claimed a fan with multiple features, including a spiral grill. To offer trade dress protection to a product configuration that embodies "significant features of patented products," the court said, would interfere with "the public's ability to practice patented inventions after the patents have expired." *Id.* at 1508, 58 F.3d 1498, 35 U.S.P.Q.2d at 1340. Accordingly, the court held that a product configuration may not be accorded protection under the Lanham Act when the configuration is a "described, significant inventive component" of an issued utility patent. *Id.* at 1510, 35 U.S.P.Q.2d at 1342.

The district court did not address the question whether the curved winch post is "functional," as that term is used in trademark law. Instead, the court concluded that because the curved winch post is disclosed in the '261 patent and claimed in one of the dependent claims of that patent, it is "a significant inventive aspect" of the patent. For that reason, the district court

concluded that Midwest was not entitled to Lanham Act protection for its trade dress. The court then concluded that Midwest's state law claims conflicted with patent policy for the same reasons. The court therefore held that those claims were preempted by federal patent law and had to be dismissed.

On Midwest's motion for reconsideration, the court vacated its order of dismissal. The court held that because Karavan's dismissal motion relied on material outside the pleadings, dismissal was inappropriate. The court, however, exercised its authority to convert Karavan's motion into a motion for summary judgment and granted summary judgment on the same grounds on which it had based its dismissal order. The court then entered final judgment on the nonpatent counts pursuant to Fed. R.Civ.P. 54(b), and Midwest took this appeal.

II

A

In *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1029, 1033, 226 U.S.P.Q. 881, 890, 892–93 (Fed.Cir. 1985), we held that when called upon to determine whether patent law preempts particular state law causes of action or conflicts with rights created by other federal laws, we would apply the law of the circuit from which the case comes to us. We reiterated that holding in subsequent cases involving claims that patent law preempted particular state law claims. *See Interpart Corp. v. Italia,* 777 F.2d 678, 684, 228 U.S.P.Q. 124, 128 (Fed.Cir.1985); *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1333, 47 U.S.P.Q.2d 1769, 1780 (Fed.Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1037, 143 L.Ed.2d 45 (1999). Our consideration of this case, however, has led us to conclude that we should abandon our practice of applying regional circuit law in resolving questions involving the relationship between patent law and other federal and

state law rights. Henceforth, we will apply our own law to such questions. To the extent that *Cable Electric Products, Inc. v. Genmark, Inc., Interpart Corp. v. Italia,* and *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* hold that we are required to apply regional circuit law to conflicts between patent law and other legal rights, we therefore overrule those decisions.*

■ In reviewing district court judgments in patent cases, we apply our own law with respect to patent law issues, but with respect to nonpatent issues we generally apply the law of the circuit in which the district court sits. *See Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422, 1440, 223 U.S.P.Q. 1074, 1087 (Fed.Cir.1984) (in banc). We apply Federal Circuit law to patent issues in order to serve one of the principal purposes for the creation of this court: to promote uniformity in the law with regard to subject matter within our exclusive appellate jurisdiction. *See* S.Rep. No. 97–275, at 5 (1981), *reprinted in* 1982 U.S.C.C.A.N. 11, 15. When we apply regional circuit law to nonpatent issues, we do so in order to avoid the risk that district courts and litigants will be forced to select from two competing lines of authority based on which circuit may have jurisdiction over an appeal that may ultimately be taken, and to minimize the incentive for forum-shopping by parties who are in a position to determine, by their selection of claims, the court to which an appeal will go. *See Atari,* 747 F.2d at 1439, 223 U.S.P.Q. at 1087.

Distinguishing between "patent issues" and "nonpatent issues" has clarified the choice of law question for most purposes, but in some instances it has not been obvious whether a particular issue should be characterized as a "patent" issue or not. We have held that a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue "pertain[s] to patent law," *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75, 223 U.S.P.Q. 465, 471 (Fed.Cir.1984), if it "bears an essential relationship to matters committed to our exclusive control by statute," *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 858–59, 20 U.S.P.Q.2d 1252, 1259 (Fed.Cir.1991), or if it "clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction," *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212, 2 U.S.P.Q.2d 2015, 2018 (Fed.Cir.1987).

Applying those standards, we have held that Federal Circuit law applies to questions such as whether the district court has personal jurisdiction over the defendant in a patent suit, *see Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564, 30 U.S.P.Q.2d 1001, 1006 (Fed.Cir.1994); whether the plaintiff has established its right to a preliminary injunction in a patent case, *see Hybritech Inc. v. Abbott Lab.,* 849 F.2d 1446, 1451 n. 12, 7 U.S.P.Q.2d 1191, 1195 n. 12 (Fed.Cir.1988); whether there is a sufficient controversy between the parties to permit an accused infringer to bring an action seeking a declaratory judgment of patent noninfringement or invalidity, *see Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 954–55 n. 3, 3 U.S.P.Q.2d 1310, 1311 n. 3 (Fed.Cir. 1987); whether a patentee is entitled to have the issue of inequitable conduct tried in the jury trial that the patentee has demanded on the issue of infringement, *see Gardco Mfg., Inc.,* 820 F.2d at 1212, 2 U.S.P.Q.2d at 2019; and whether particular materials are relevant for purposes of discovery in a patent case under Fed. R.Civ.P. 26, *see Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207, 1212, 2 U.P.S.Q.2d 1034, 1038 (Fed.Cir. 1987). We have thus applied our law be-

---

* Because a panel of this court lacks the authority to overrule one of the court's precedents, we are acting en banc with respect to the resolution of the choice of law issue. Accordingly, Chief Judge Mayer, Circuit Judge Rich, Senior Circuit Judge Smith, and Circuit Judges Newman, Michel, Plager, Lourie, Clevenger, Rader, Schall, Bryson, and Gajarsa join in Part II–A of this opinion, which resolves the choice of law issue.

yond the limits of substantive patent law and into areas in which the disposition of nonpatent-law issues is affected by the special circumstances of the patent law setting in which those issues arise.

Two cases that illustrate this court's recent approach to such "mixed" questions of patent and nonpatent law are *Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 37 U.S.PQ.2d 1626 (Fed.Cir. 1996), and *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 46 U.S.P.Q.2d 1097 (Fed.Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 178, 142 L.Ed.2d 145 (1998). In the *Pro–Mold* case, the defendant argued that the plaintiff engaged in unfair competition by filing a complaint for patent infringement while knowing that its patent was unenforceable. Although we do not have exclusive jurisdiction over unfair competition claims, we nonetheless held that Federal Circuit law applies to the question whether inequitable conduct in the prosecution of a patent constitutes unfair competition. *See* 75 F.3d at 1574, 37 U.S.P.Q.2d at 1631. By applying our law to the question whether patent law creates the exclusive remedy for a claim of inequitable conduct in procuring a patent, we held that our law applies to a cause of action over which we do not have exclusive jurisdiction if the question before us is whether that cause of action, as applied in a particular case, is foreclosed by patent law. Articulated in that fashion, the rationale of the *Pro–Mold* case would support applying Federal Circuit law to the analogous question whether patent law forecloses Midwest's claims under federal and state trademark law.

Similarly, in the *Nobelpharma* case, this court held, en banc, that the question whether particular conduct by a patentee exposes the patentee to suit under the antitrust laws would be decided under this court's precedents, because the court regarded the question as one that "clearly involves our exclusive jurisdiction over patent cases." *Nobelpharma*, 141 F.3d at 1067–68, 46 U.S.P.Q.2d at 1103–04. The

court so ruled even though the issue required the court to decide the scope of antitrust liability, a matter not within our exclusive jurisdiction. Again, the parallel with this case is a close one. In both *Nobelpharma* and this case, this court was required to address a nonpatent claim and to decide whether that claim was barred by principles of patent law. In *Nobelpharma*, the court concluded that our responsibilities for developing consistent rules in the field of patent law required that we apply our law to the question whether patent law forecloses another cause of action and, if so, under what circumstances. The same principle would appear to require us to apply our own law in this case, which calls upon us to decide whether any principle of patent law bars Midwest from pursuing its federal or state trademark claims.

From an analysis of these recent precedents, we conclude that the rigid division between substantive patent law issues and all other substantive and procedural issues, which was the basis for the court's choice-of-law ruling in the *Cable Electric* case, no longer represents this court's approach to choice-of-law questions in patent cases. Rather, cases such as *Pro–Mold* and *Nobelpharma* make clear that our responsibility as the tribunal having sole appellate responsibility for the development of patent law requires that we do more than simply apply our law to questions of substantive patent law. In order to fulfill our obligation of promoting uniformity in the field of patent law, it is equally important to apply our construction of patent law to the questions whether and to what extent patent law preempts or conflicts with other causes of action. Otherwise, we will be forced into the awkward posture of holding that, with respect to cases coming to us from district courts in some circuits, patent law forecloses certain other causes of action, but with respect to cases coming to us from district courts in other circuits, it does not. We hold that our responsibility to decide what patent law permits and

prohibits requires that we apply our own law to such cases. We will therefore apply our own law to the question in this case — whether principles of patent law foreclose Midwest's claims under section 43(a) of the Lanham Act and under Iowa state trademark law.

We recognize, of course, that questions involving conflicts between patent law and other causes of action can and do arise in cases over which this court does not have appellate jurisdiction—cases in which claims under the Lanham Act or state law claims are not joined with a claim under the Patent Act. As a result, there is a risk that district courts and litigators could find themselves confronting two differing lines of authority when faced with conflicts between patent law and state or federal trademark claims. Nonetheless, as in the *Pro–Mold* and *Nobelpharma* cases where the same risk was present, we think that as the sole appellate exponent of patent law principles this court should play a leading role in fashioning the rules specifying what patent law does and does not foreclose by way of other legal remedies. If we simply follow regional circuit law in deciding questions involving the interaction between patent law principles and other legal remedies, other courts will not have the benefit of our analysis of the substance and scope of patent law in such cases. Such abdication, we think, would in the end disserve the interest in attaining coherence and consistency in the law relating to patents.

## B

Having concluded that we should apply our own law to the conflict and preemption questions presented in this case, we now address, as a panel, the question whether the district court's summary judgment on the nonpatent counts of Midwest's complaint is inconsistent with the applicable principles of law as we see them.

As a matter of Federal Circuit law we hold that the district court erred in ruling, on summary judgment, that patent law

principles foreclose Midwest's Lanham Act and state law claims.

## 1

This court and its predecessor, the Court of Customs and Patent Appeals, have had several occasions to address the interaction between patent law principles and trade dress protection. While recognizing that trade dress protection can serve important ends by facilitating customers' recognition of products and protecting producers' good will, the Court of Customs and Patent Appeals cautioned that exclusive rights in trade dress, if granted too freely, would conflict with the policy in favor of encouraging "competition by all fair means," which "encompasses the right to copy, very broadly interpreted, except where copying is lawfully prevented by a copyright or patent." *In re Deister Concentrator Co.*, 48 C.C.P.A. 952, 289 F.2d 496, 501, 129 U.S.P.Q. 314, 319 (1961).

To guard against such anti-competitive effects, the Court of Customs and Patent Appeals invoked the doctrine of "functionality" to limit the scope of trade dress protection. The court held that a seller of goods could not obtain trademark protection for a trade dress or product configuration that was primarily utilitarian, or "functional." The court then defined as "functional" any feature that possessed such utility that its protection would hinder competition. *See In re Penthouse Int'l Ltd.*, 565 F.2d 679, 682, 195 U.S.P.Q. 698, 700–01 (C.C.P.A. 1977) (functionality is addressed to whether protection of a design would "hinder competition"); *In re Mogen David Wine Corp.*, 51 C.C.P.A. 1260, 328 F.2d 925, 933, 140 U.S.P.Q. 575, 581 (1964) (Rich, J., concurring) ("Whether competition would in fact be hindered is really the crux of the matter."); *see also Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527, 1530–31, 32 U.S.P.Q.2d 1120, 1122 (Fed. Cir.1994) ("the policies underlying the functional limitation on trademark protection explicitly invoke an inquiry into competitive fairness"); *New England Butt Co.*

*v. International Trade Comm'n,* 756 F.2d 874, 879, 225 U.S.P.Q. 260, 263 (Fed.Cir. 1985) ("functionality is to be determined in light of the competitive necessity to copy").

In *Qualitex Co. v. Jacobson Products Co.,* 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248, 34 U.S.P.Q.2d 1161 (1995), the Supreme Court adopted the same approach, explaining the role of the "functionality" doctrine as follows:

> The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time ... after which competitors are free to use the innovation. If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).

514 U.S. at 164–65, 115 S.Ct. 1300, 34 U.S.P.Q.2d at 1163. The Court then defined a product feature as "functional" if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article," *Qualitex Co.,* 514 U.S. at 165, 115 S.Ct. 1300, 34 U.S.P.Q.2d at 1163–64 (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606, 214 U.S.P.Q. 1, 4 n. 10 (1982)), that is, "if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage," *Qualitex,* 514 U.S. at 165, 115 S.Ct. 1300, 34 U.S.P.Q.2d at 1164.

### 2

In defining the scope of trade dress rights, this court and its predecessor have repeatedly held that the availability of trade dress protection does not depend on whether a patent has been obtained for the product or feature in question. In *In re Mogen David Wine Corp.,* 51 C.C.P.A. 1260, 328 F.2d 925, 930, 140 U.S.P.Q. 575, 579 (1964), the Court of Customs and Patent Appeals explained that trademark rights, or rights under the law of unfair competition, "do not 'extend' the patent monopoly." Rather,

> [t]hey exist independently of it, under different law and for different reasons. The termination of either has no legal effect on the continuance of the other. When the patent monopoly ends, it ends. The trademark rights do not extend it. We know of no provision of patent law, statutory or otherwise, that guarantees to anyone an absolute right to copy the subject matter of any expired patent. Patent expiration is nothing more than the cessation of the patentee's right to exclude held under the patent law.

This court expanded upon that theme in *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d at 1031, 226 U.S.P.Q. at 891, where the court explained that in resolving the question of product design functionality for purposes of the Lanham Act, "reference to utility patent claims that are, or have been, asserted to read on either product, or to the appearance of the device depicted in figures included in the patent specification supporting such claims, must be done with caution."

To be sure, statements in a patent may provide evidence that the asserted trade dress is functional, and thus not entitled to legal protection. *See In re Bose Corp.,* 772 F.2d 866, 872, 227 U.S.P.Q 1, 6 (Fed.Cir.1985); *In re Morton–Norwich Prods., Inc.,* 671 F.2d 1332, 1340–41, 213 U.S.P.Q. 9, 15–16 (1982); *In re Honeywell, Inc.,* 497 F.2d 1344, 1348, 181 U.S.P.Q. 821, 824 (1974). But the fact that a patent has been acquired does not convert what otherwise would have been protected trade dress into nonprotected matter. As the Court of Customs and Patent Appeals put the matter in the seminal *Deister* case, "we are not seriously con-

cerned with whether he who claims trademark rights of unlimited duration now has or did have patent protection, or what that protection was." 289 F.2d at 501, 129 USPQ at 319.

### 3

In several older decisions, the Supreme Court used broad language suggesting that trademark rights could not be obtained in product features that had been disclosed in a patent. *See Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 185, 16 S.Ct. 1002, 41 L.Ed. 118 (1896); *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 119–22, 59 S.Ct. 109, 83 L.Ed. 73 (1938); *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256, 66 S.Ct. 101, 90 L.Ed. 47, 67 U.S.P.Q. 193 (1945); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, 140 U.S.P.Q. 524 (1964), and *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, 140 U.S.P.Q. 528 (1964). Those cases, however, have not been read expansively. The Court of Customs and Patent Appeals construed that line of cases as limited to the proposition that trademark rights cannot be obtained in functional features of products that had been disclosed in patents. *See In re Honeywell, Inc.*, 497 F.2d 1344, 1348–49, 181 U.S.P.Q. 821, 824–25 (1974). More recently, the Supreme Court itself has indicated that those cases do not have a broad preclusive effect on state and federal trade dress protections.

In *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118, 9 U.S.P.Q.2d 1847 (1989), the Court held that a state may not create patent-like rights that would bar the copying of design and utilitarian ideas embodied in unpatented products. The Court emphasized, however, that it did not mean to foreclose traditional rights such as protections for trade dress provided by state and federal law. Addressing the *Sears* and *Compco* cases, the Court noted that those cases "could be taken to stand for the proposition that the States are com-

pletely disabled from offering any form of protection to articles or processes which fall within the broad scope of patentable subject matter." *Bonito Boats*, 489 U.S. at 154, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1853. The Court refused, however, to draw such a "broad pre-emptive principle" from *Sears* and *Compco*. Instead, the Court pointed to the statement in *Sears* that "the States 'may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading customers as to the source of goods.'" *Bonito Boats*, 489 U.S. at 154, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1853 (quoting *Sears*, 376 U.S. at 232, 84 S.Ct. 784, 140 U.S.P.Q. at 528). Based on that statement by the *Sears* Court and language in intervening Supreme Court decisions, the *Bonito Boats* Court explained that "while *Sears* speaks in absolutist terms, its conclusion that the States may place some conditions on the use of trade dress indicates an implicit recognition that all state regulation of potentially patentable but unpatented subject matter is not *ipso facto* pre-empted by the federal patent laws." *Bonito Boats*, 489 U.S. at 154, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1853. What *Sears* and *Compco* stand for, the Court concluded, is that "the States may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law." *Id.* at 156, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1854.

Trade dress protections do not impermissibly interfere with the federal patent scheme, the Court explained, as they have traditionally been "limited to protection against copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source." 489 U.S. at 158, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1858; *see also id.* at 165, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1858. The Court cited the Lanham Act as an indication that Congress regards protections against unfair

competition as consistent with patent principles, and it added that "application of *Sears* and *Compco* to nonfunctional aspects of a product which have been shown to identify source must take account of competing federal policies in this regard." *Id.* at 166, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1858.

Other courts of appeals, both before and after *Bonito Boats,* have followed the lead of the Court of Customs and Patent Appeals in holding that a product may be entitled to trade dress protection for distinctive, nonfunctional features, even if the product is, or has been, the subject of a patent. *See Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 548, 549 n. 16, 48 U.S.P.Q.2d 1065, 1080–81, 1081 n. 16 (5th Cir.1998); *Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 287–89, 46 U.S.P.Q.2d 1026, 1032–33 (7th Cir.1998); *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts,* 944 F.2d 1235, 1241, 20 U.S.P.Q.2d 1001, 1006–07 (6th Cir. 1991); *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.,* 685 F.2d 78, 81, 216 U.S.P.Q. 102, 105 (3d Cir.1982); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 203, 203 U.S.P.Q. 161, 163–64 (2d Cir.1979); *Truck Equip. Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1214–15, 191 U.S.P.Q. 79, 82–83 (8th Cir. 1976); *see also Pachmayr Gun Works, Inc., v. Olin Mathieson Chem. Corp.,* 502 F.2d 802, 806–07, 183 U.S.P.Q. 5, 8–9 (9th Cir.1974). The Tenth Circuit stands alone in holding to the contrary, ruling that trade dress protection is unavailable for a product configuration that is claimed in a patent and is a "described, significant inventive aspect" of the patented invention, even if the configuration is nonfunctional. *See Vornado,* 58 F.3d at 1510, 35 U.S.P.Q.2d at 1342.

4

■ The district court's ruling on Midwest's Lanham Act claim was not premised on a finding of functionality, but on the court's conclusion, based on the Tenth Circuit's *Vornado* decision, that the curved winch post claimed in the '261 patent was a "significant inventive aspect" of the patent. As we view the interaction between patent law and the Lanham Act, that is not a sufficient basis on which to deny Lanham Act protection to trade dress that would otherwise qualify for such protection.

Because a winch post that is "curved forwardly and upwardly" is a limitation of claim 10 of the '261 patent, the curved winch post that Midwest claims as its trade dress might be regarded as a "significant inventive aspect" of the patent. But that is not to say that the curved winch post is "functional," *i.e.,* that Midwest's right to exclude others from using that feature "would put competitors at a significant non-reputation-related disadvantage." *Qualitex,* 514 U.S. at 165, 115 S.Ct. 1300, 34 U.S.P.Q.2d at 1164. In light of the Supreme Court's decision in *Bonito Boats* and this court's precedents regarding the relationship between the Lanham Act and patent law principles, the district court must conduct an inquiry into functionality in order to determine whether Midwest's curved winch post is entitled to protection as trade dress under section 43(a) of the Lanham Act.

5

■ Similar analysis requires us to reverse the district court's order granting summary judgment against Midwest on its state law claims. As in the case of the Lanham Act claim, the district court granted summary judgment on Midwest's state law claims based on the *Vornado* case and without addressing the issue of functionality. The fact that a curved winch post was disclosed and claimed in the '261 patent is not a sufficient basis for granting judgment against Midwest on the state law claims.

■ Under Iowa's trademark statute, the use of a registered mark with goods or services is actionable only if "such use is likely to cause confusion or mistake, or to deceive as to the source of origin of such

goods or services." Iowa Code § 548.112. *See Sargent & Co. v. Welco Feed Mfg. Co.,* 195 F.2d 929, 934, 93 U.S.P.Q. 144, 148 (8th Cir.1952). The Iowa common law of trademarks has likewise long required proof of passing off or consumer confusion. *See Shaver v. Shaver,* 54 Iowa 208, 6 N.W. 188, 189 (1880). Accordingly, our holding that patent law and the Lanham Act erect distinct protections that can be separately enforced applies to Midwest's state claims as well. In particular, the Supreme Court's discussion in *Bonito Boats* of state law regulation directed at consumer confusion applies directly to the Iowa law claims at issue. We therefore conclude that Midwest may be entitled to state law trade dress protection for its curved winch post, and that the district court improperly granted summary judgment on Midwest's state law claims.

■ That is not to say that patent law principles have no preemptive effect on state law claims simply because those claims are for trade dress protection. If, under the rubric of "trade dress" protection, state law should purport to give Midwest the right to exclude others from using a feature that confers a significant non-reputation-related market advantage over its competitors, the state law cause of action would conflict with federal patent law principles and be preempted. *See Bonito Boats,* 489 U.S. at 167, 109 S.Ct. 971, 9 U.S.P.Q.2d at 1858–59; *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1580, 36 U.S.P.Q.2d 1417, 1423 (Fed.Cir.1995). The central question, as under the Lanham Act, is whether the feature for which trade dress protection is asserted is functional.

Even if curved winch posts are found to be a functional feature in the trailers claimed in the '261 patent, Midwest may still be entitled to claim trade dress protection in its particular design. Midwest contends that it is not seeking protection for all curved winch posts, but only for the particular curved winch post design that it uses as its trade dress. If that particular design is sufficiently distinctive to serve as a designation of source and if the protection of that particular design does not result in a meaningful restriction on Karavan's ability to compete in the market, either before or after the expiration of the '261 patent, then Midwest's state law claims, as well as its Lanham Act claim, would not be barred by any overriding federal policy.

In sum, the fact that Midwest's patent discloses and claims a trailer having a curved winch post does not necessarily mean that Midwest cannot assert trade dress rights in the particular curved winch post design that it uses in its trailers. In order to determine whether Midwest enjoys trade dress rights, the district court must determine whether Midwest's winch post design is functional, and whether Midwest has satisfied the other requirements for protection under the Lanham Act and Iowa state trademark law.

*REVERSED and REMANDED.*